Craig J. SONKSEN and Mary Sue Sonksen, Appellants,

v.

LEGAL SERVICES CORPORATION, William M. Turner and Scott Jenkins, Jr., Appellees.

No. 85–1078.

Supreme Court of Iowa.

June 18, 1986.

William H. Michelson, Des Moines, for appellants.

Bradshaw, Fowler, Proctor & Fairgrave, Des Moines, for appellees.

HARRIS, Justice.

The submission in trial court was upon plaintiffs' counsel's application for attorney fees under a federal statute. None were allowed because counsel made no showing establishing the statutory grounds. We affirm. On a separate matter we censure appellants' counsel, William H. Michelson, for unprofessional remarks in the appellants' brief.

Beginning in 1980 defendant Legal Services Corporation of Iowa represented defendants Turner and Jenkins in a complicated dispute with plaintiffs Craig J. and Mary Sue Sonksen. The Sonksens owned apartment rental property. Turner and Jenkins, claiming to be their tenants, sought to compel the furnishing of certain utility services and also alleged various violations of Iowa Code chapter 562A (uniform residential landlord and tenant law). The court entered a temporary restraining order requiring the Sonksens to restore utility services.

A long, bitter, and procedurally complex series of actions followed which need not be detailed here. Eventually a ruling, filed in 1984, found that the 1980 injunction should not have been issued because defendant Jenkins had never been a tenant of the Sonksens and defendant Turner was not one at the time the equitable action was commenced. A bond, furnished for the injunction, was ordered paid over to the Sonksens.

I. Throughout the litigation, the Sonksens were represented by William H. Michelson; Turner and Jenkins were repre-

sented by Legal Services Corporation. In January 1985 the Sonksens filed an application for attorney fees pursuant to 42 U.S.C. section 2996e(f) (West Supp. 1986). That statute provides as follows:

> If an action is commenced by the [appropriate federally funded corporation] or by a recipient and a final order is entered in favor of the defendant and against the Corporation or a recipient's plaintiff, the court shall, upon motion by the defendant *and upon a finding by the court that the action was commenced or pursued for the sole purpose of harassment of the defendant or that the Corporation or a recipient's plaintiff maliciously abused legal process,* enter an order [which can be appealed] awarding reasonable costs and legal fees incurred by the defendant in defense of the action, except when in contravention of a State law, a rule of court, or a statute of general applicability. Any such costs and fees shall be directly paid by the Corporation.

(Emphasis added.) The total fees sought were $13,460.00.

After the claim was filed Legal Services Corporation was added as a defendant and the four related actions were consolidated for the purposes of the motion. The court specially set a one-day hearing "to determine whether an award of attorneys fees is appropriate ... pursuant to 42 U.S.C. 2996e(f)" and directed that all related files be produced for the hearing.

At the hearing plaintiffs' counsel presented only a procedural overview of the litigation and an explanation of his understanding of the statute. He believed "this is not much more than a show cause hearing to see whether anyone has anything to say before such a relief should issue." Conspicuously absent was any thread of evidence concerning either a "sole purpose of harassment," or "abuse of process."

Following plaintiffs' counsel's statement, counsel for Legal Services Corporation moved to dismiss, arguing "the statute clearly puts the burden on Mr. Michelson" to show entitlement to the fees and that "there has been absolutely no evidence introduced on behalf of Mr. Sonksen or Mr. Michelson...." The motion was sustained.

■ The ruling was correct. The statute does clearly place the burden on the claimant to establish either the (1) sole purpose of harassment or (2) abuse of process grounds. In *Flora v. Moore,* 461 F.Supp. 1104 (N.D.Miss.1978), *aff'd. mem.,* 631 F.2d 730 (5th Cir.1980) the first ground was equated with a showing of bad faith. The court found such a showing on the basis of the corporation's "obstinate refusal to recognize the orders of this court...." 461 F.Supp. at 1122. No such showing was found in *Davison v. Idaho Department of Health & Welfare,* 105 Idaho 784, 785, 673 P.2d 384, 385 (1983) (reversing on rehearing a contrary earlier view) or in *In re Kelly,* 423 So.2d 234, 238 (Ala.Civ.App.1982) (court found "no evidence ... comparable to the examples in *Flora* ... liability under section 2996e(f) arises only in extreme cases....").

Plaintiffs here wholly failed to present any evidence to meet the relatively strict requirements of the statute. The ruling must be affirmed.

■ II. Although it relates in no way to our holding in the foregoing division we feel compelled to consider other aspects of the appellants' brief. We claim and exercise the inherent power to admit those who practice before our courts and assume the responsibility to discipline them. *Committee on Professional Ethics and Conduct v. Toomey,* 236 N.W.2d 39, 40 (Iowa 1975). We would be derelict in our disciplinary responsibility if we overlooked a veritable parade of comments which must be condemned as outrageously unprofessional. Indeed, appellants' brief consists largely of a diatribe against defendants, replete with the most offensive racism and cruel sarcasm about the poor. Opposing counsel and the trial court are also subjected to intemperate and disparaging epithets. The following examples will suffice as illustrations:

Defendants Turner and Jenkins are referred to as "members of the black underclass."

"The apparent motive of [defendants] was to be relocated into municipal public housing so that they might suck at the teat of the welfare state forever."

Referring to the property involved in the litigation: "only welfare recipients or the lowest rung of the working class desire to live there."

Refer to the neighborhood tenants organization as "naive, hopeless, quixotic attempt"; also refers to them as an "informal group of paupers."

Discussing the federal statute at issue: "Congress was apparently mindful that some legal aid lawyers are naive unrealists with blinders on, and that some poor people with legal complaints against others are either cretins, crackpots or criminals."

"Possibly [legal aid attorneys] have a somewhat greater duty, since they should understand that the income groups they will represent contain a higher-than-normal percentage of liars and weirdos."

Discussing the *Flora* decision previously mentioned "*Flora* was a civil rights action against a Mississippi county hospital, brought by numerous black employees aggrieved about such monumental injustices as being denied vacation time at the time desired or cleaning personnel being required to 'do windows' (so to speak)."

Discussing *Flora* "[T]he whining, vapid, tale of the plaintiffs was apparently to the effect that 'if we were white they would give us everything we want' (a likely story!)."

"That their effort should have been reversed by, of all people, a court of equity, is enough to make one retch. That they should have been forced to incur five years of legal battling and resultant expenses, and then be denied their fees by the same court that found in their favor, is enough to make one cry. It is

this which we request the Supreme Court to reverse."

"Yet it is apparently not the ignorant psychopaths who appeared as plaintiffs, but the willfully perverse legal aid attorney Powers, reputed to be a licensed attorney in this State, who truly bears responsibility for the offending proceedings."

■ We must of course accord lawyers the widest possible freedom of expression. First amendment rights are of crucial importance to everyone, but to no one are they more vital than a lawyer acting in a professional capacity. Although they tend to be ineffective for purposes of advocacy, comments which betray socially unacceptable views can and must be tolerated in the courts—but only up to a point. That point was reached and greatly exceeded in this case. The comments plainly amounted to "undignified [and] discourteous conduct ... degrading to [this] tribunal." Iowa Code of Professional Responsibility For Lawyers DR 7–106(C)(6). It also violated EC 1–5. The demeaning comment concerning the trial court ruling violated EC 7–22. The derogatory personal references to opposing counsel violated EC 7–37.

■ We find the statements, previously quoted, to be flagrantly unprofessional. The papers filed in the courts of this state should contain no racial slurs or language calculated to demean poor persons. It is likewise unprofessional to personally demean opposing counsel or a trial tribunal. William H. Michelson is censured for his unethical comments.

This is not our first criticism of this counsel's unprofessional conduct. *See Committee on Professional Ethics and Conduct v. Michelson*, 345 N.W.2d 112 (Iowa 1984). That case, and this one, will be weighed in considering sanctions for any future ethical violations.

AFFIRMED.

All Justices concur except WOLLE and LAVORATO, JJ., who take no part.