**IOWA SUPREME COURT ATTORNEY DISCIPLINARY BOARD,
Complainant,**

v.

**Michael L. ZENOR, Respondent.**

No. 05–0737.

Supreme Court of Iowa.

Dec. 16, 2005.

Charles L. Harrington and Teresa A. Vens, Des Moines, for complainant.

Mark McCormick of Belin Lamson McCormick Zumbach Flynn, P.C., Des Moines, for respondent.

LAVORATO, Chief Justice.

This attorney disciplinary proceeding involves the conduct of Michael L. Zenor in his role as county attorney of Clay County. The allegations of misconduct fall into three main categories: causing charges to be instituted without probable cause, engaging in the defense of persons in criminal matters, and prosecuting persons who were his clients. The Iowa Supreme Court Board of Professional Ethics and Conduct, now the Iowa Supreme Court Attorney Disciplinary Board, filed the complaint alleging these matters in four counts. Later, by amendment, the Board added an additional matter to the fourth count.

Following a hearing, the Grievance Commission of the Iowa Supreme Court dismissed the count alleging that Zenor caused charges to be instituted without probable cause. However, the Commission found that the Board had sustained its burden of proof regarding its allegations that Zenor engaged in the defense of persons in criminal matters and that he had prosecuted persons who were his clients. The Commission recommended that Zenor receive a public reprimand.

On our de novo review, we find that the Board has proved all four counts of its amended complaint. Contrary to the Commission's recommendation, we think the misconduct as proven warrants suspension of Zenor's license to practice law in this state for four months.

## I. Scope of Review.

Although neither party appealed, we ordered the parties to file briefs addressing all counts. Zenor contends we are without authority to review the one count that the Commission dismissed. We rejected a similar contention in *Iowa Supreme Court Attorney Disciplinary Board v. Howe*, 706 N.W.2d 360, 367 (Iowa 2005). We therefore conclude we do have such authority.

Our review is de novo. *See* Iowa Ct. R. 35.10(1). Under this review, we give respectful consideration to the Commission's recommendation. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Shinkle*, 698 N.W.2d 316, 318 (Iowa 2005). However, "we ultimately decide what discipline is appropriate under the unique facts of each case." *Id.* Accordingly, we may impose a lesser or greater sanction than the discipline the Commission recommends. *Id.*

"The Board has the burden to prove its allegations of lawyer misconduct by a convincing preponderance of the evidence." *Id.* " 'This burden of proof is greater than that in a civil case but less than that in a criminal case.' " *Id.* (citation omitted).

## II. Background Facts.

Zenor was admitted to the practice of law in the State of Iowa in 1975. He was a sole practitioner in Spencer, Iowa from 1975 to 1978. In 1978, he was elected Clay County Attorney. Following Zenor's election, Pat Carr served as Zenor's assistant county attorney and joined Zenor as a law partner in Zenor & Carr.

Zenor has been Clay County Attorney since 1978 and was still serving in that capacity at the time of the hearing on the complaint. Carr continued as both law firm partner and assistant county attorney from 1978 until his appointment to the bench in 1995.

Mike Houchins and Chuck Borth presently serve as Zenor's assistant county attorneys. Houchins and Borth are also partners in the firm of Zenor, Houchins & Borth.

The positions of Clay County Attorney and assistants have always been salaried and part-time. They are allowed under the law to engage in the private practice of law. *See* Iowa Code §§ 331.751(1) ("A *full-time* county attorney shall refrain from the private practice of law." (Emphasis added.)), 331.757 ("A *full-time* prosecutor shall refrain from the private practice of law." (Emphasis added.)) (2005).

Since his election in 1978, Zenor has handled cases ranging from simple misdemeanor traffic tickets to trials of class "A" felonies. In addition to his duties as criminal prosecutor, Zenor has advised and represented Clay County on civil matters. Since Houchins and Borth became Zenor's assistant county attorneys, Zenor has concentrated on the county's civil work. During that time, Houchins and Borth have done most of the work in magistrate court.

Presently, Zenor spends approximately thirty percent of his time on Clay County matters and the rest of his time he spends on private practice matters.

## III. Instituting Charges Without Probable Cause.

■ In count I, the Board alleged, among other things, the following. While acting as Clay County Attorney, Zenor had the authority to enter into plea agreements and amend traffic citations. On numerous occasions, in connection with plea agreements, Zenor amended traffic citations to cowl-lamp violations pursuant to Iowa Code section 321.406. It was obvious to Zenor that the cowl-lamp violations were not supported by probable cause.

The Board alleged this conduct violated several provisions of the Iowa Code of Professional Responsibility for Lawyers. These provisions included DR 7–102(A)(2) (lawyer shall not "[k]nowingly advance a claim or defense that is unwarranted under existing law"), (5) (lawyer shall not "[k]nowingly make a false statement of law or fact"), (6) (lawyer shall not "[p]articipate in the creation or preservation of evidence when the lawyer knows or it is obvious that the evidence is false"), (7) (lawyer shall not "[c]ounsel or assist a client in conduct that the lawyer knows to be illegal or fraudulent"); DR 7–103(A) ("A public prosecutor ... shall not institute or cause to be instituted criminal charges when the lawyer knows or it is obvious that the charges are not supported by probable cause."); and DR 1–102(A)(1) (lawyer shall not "[v]iolate a disciplinary rule"), (4) (lawyer shall not "[e]ngage in conduct involving dishonesty, fraud, deceit, or misrepresentation"), (5) (lawyer shall not "[e]ngage in conduct that is prejudicial to the administration of justice").

■ Between January 1998 and February 10, 2004, the Clay County Attorney's office participated in the process of amending 168 charges to cowl-lamp violations. Zenor himself participated in the process of amending at least ten of these charges to cowl-lamp violations. During all this time, Zenor was aware that motor vehicles were no longer equipped with cowl lamps. Zenor admitted he had no probable cause to believe the cowl-lamp violation had occurred. "Probable cause for a criminal charge means that the circumstances would support a belief by a reasonable person that the defendant committed the crime with which [the defendant] is charged." *Howe*, 706 N.W.2d at 368. Zenor also admitted that he knew his assistants were participating in the practice of amending charges to cowl-lamp violations but he did nothing to stop the practice.

In his brief to this court, Zenor attempts to explain away the probable cause violation on a number of grounds. For example, when he became county attorney he was aware of a common practice in Clay County for prosecutors to use the cowl-lamp statute as a basis for reducing a simple misdemeanor moving traffic violation to a non-moving violation pursuant to a plea agreement. He continued this practice in exceptional cases but only with the complete concurrence of the arresting officer and the court. He considered amending a charge to be an exercise of prosecutorial discretion to accomplish justice in cases in which mitigating circumstances exist. Everyone involved in the plea bargain, including then Magistrate Nancy Whittenburg (now district judge), understood that the cowl-lamp charge lacked a factual basis, but no one believed that a factual basis was required. No one was misled.

We rejected all of these explanations and contentions in *Howe*, a case involving similar facts but involving a city attorney rather than a county attorney. 706

N.W.2d at 366–71. Bradley Howe, a part-time city attorney for the city of Spencer, Iowa, admitted that from January 1998 through February 2004, he successfully moved then Magistrate Whittenburg to amend 174 citations that originally charged violations of a city ordinance to allege violations of the cowl-lamp statute. *Id.* at 367. Howe also admitted he knew at the time that there was no probable cause to believe the defendants in those 174 cases had violated the cowl-lamp statute. *Id.*

We concluded in *Howe* that DR 7–103(A) contains no exceptions to the probable cause requirement for charges resulting from plea bargains. We insisted that this ethical provision "means what it says: prosecutors cannot ethically file charges they know lack probable cause." *Id.* at 371.

Concluding that Howe violated DR 7–103(A), we said:

> [Howe's] ethical duty [not to institute charges lacking probable cause] is not affected by the requirements for a guilty plea to a simple misdemeanor. Nor does the informed and willing participation of the police officers, the defendants, and the magistrate in the plea bargains at issue here excuse the respondent's violations.

*Id.* Likewise here, we conclude Zenor's conduct constituted a violation of DR 7–103(A), prohibiting a prosecutor from "institut[ing] or caus[ing] to be instituted criminal charges when the lawyer knows or it is obvious that the charges are not supported by probable cause." DR 7–103(A).

## IV. Engaging in the Defense of Persons in Criminal Matters and Prosecuting Persons Who Were Clients.

**A. Butler representation.** In count II, the Board alleged that Zenor prosecuted a speeding case against Robert Merrell Butler while representing Butler on the same speeding case and on a divorce case in another county.

The Board alleged this conduct violated several provisions of the Iowa Code of Professional Responsibility. These included DR 8–101(B) ("County attorneys and assistant county attorneys shall not engage in the defense of an accused in any criminal matter during the time they are holding this public office."); DR 5–101(A) ("Except with the consent of the client after full disclosure, a lawyer shall not accept employment if the exercise of the lawyer's professional judgment on behalf of the client will be or reasonably may be affected by the lawyer's own financial, business, property, or personal interests."); DR 5–105(B) ("A lawyer shall decline proffered employment if the exercise of independent professional judgment on behalf of a client will be or is likely to be adversely affected by the acceptance of the proffered employment...."), (C) ("A lawyer shall not continue multiple employment if the exercise of independent professional judgment on behalf of a client will be or is likely to be adversely affected by the representation of another client...."); DR 9–101(B) ("A lawyer shall not accept private employment in a matter in which the lawyer had substantial responsibility while a public employee."); and DR 1–102(A)(1), (5).

In early 2000 Butler came to Zenor for legal services concerning Butler's divorce case. It was a long and difficult case that was dismissed at one point and refiled later. At the time of the hearing before the Commission, a modification was pending in the divorce case. Zenor worked on matters in the divorce case as they arose and billed Butler for the work.

In 2002 Butler was charged with a federal firearms charge. Another attorney

represented Butler on this charge. However, Zenor did some research on the case and billed Butler for the work.

In November 2002 the State filed a bad check charge against Butler in Jefferson County, Iowa. On Butler's behalf, Zenor called the prosecutor on the case to inquire about that office's standard deal for this type of charge and relayed this information to Butler.

In November 2002 Butler was charged in Clay County with speeding. The Clay County Attorney's office prosecuted the charge. On December 9, 2002, Zenor had a meeting with Dean Jalas, the state trooper who ticketed Butler. Zenor billed Butler for this meeting, but testified he later refunded the money.

On December 11, 2002, Zenor entered a not guilty plea on Butler's behalf on the Clay County charge. On March 6, 2003, Butler pleaded guilty to an amended charge of cowl-lamp violation. Zenor testified that he was at a meeting in Minnesota on that date and did not appear in court.

On March 17, 2003, Zenor wrote a letter to the Iowa Department of Transportation (IDOT) on behalf of Butler, appealing the suspension of Butler's driver's license. Later, Zenor withdrew the request for a contested hearing concerning the suspension.

From early 2003 through August 2004, Zenor provided legal assistance to Butler on various charged violations of the Iowa Department of Natural Resources rules. Butler was billed for the time Zenor worked on the charges.

The Commission found that Zenor violated DR 8–101(B); DR 9–101(B); DR 5–101(A); DR 5–105(B, C); and DR 1–102(A)(1), (5). For reasons that follow we agree.

■ Zenor's representation of Butler while Zenor prosecuted Butler's speeding ticket violated DR 8–101(B), which prohibits a county attorney from engaging in the defense of an accused in any criminal matter. Zenor met with the ticketing officer, presumably to get the officer's agreement to amend the speeding charge to a cowl-lamp violation. Thereafter Zenor entered a not guilty plea for Butler. Later, Zenor involved himself in the process of amending the speeding charge to a cowl-lamp violation. The fact that Zenor refunded money to Butler for the meeting with the officer fails to convince us that Zenor did not represent Butler on the speeding charge.

Additionally, Zenor's participation in both the prosecution and defense of the speeding ticket is a violation of DR 5–105(B), which requires a lawyer to decline proffered employment if the exercise of independent professional judgment on behalf of a client will be or is likely to be adversely affected by the acceptance of proffered employment and DR 5–105(C), which prohibits a lawyer from continuing multiple employment if the exercise of professional independent judgment on behalf of a client will be or is likely to be adversely affected by the representation of another client. Zenor could not have rendered independent professional judgment on behalf of either client when representing opposing sides with opposing interests. *See Howe*, 706 N.W.2d at 373 (finding that city attorney violated DR 5–105(B) by prosecuting defendant on city charges while at the same time he was seeking to have the identical charges dismissed on behalf of defendant).

Canon 5 of the Code of Professional Responsibility concerns a lawyer's duty to exercise independent professional judgment on behalf of a client and states in part:

The professional judgment of a lawyer should be exercised, within the bounds of the law, solely for the benefit of the client and *free of compromising influences and loyalties.* Neither personal interests, *the interests of other clients,* nor the desires of third persons *should be permitted to dilute a lawyer's loyalty to a client.*

EC 5–1 (emphasis added). Even though the ethical considerations are aspirational and not mandatory, *Comm. on Prof'l Ethics & Conduct v. Carty,* 515 N.W.2d 32, 34–35 (Iowa 1994), Canon 5 does get to the heart of conflict-of-interests violations. It is inconceivable to us that in representing both the State and the criminal defendant on the same charge that one could be "free of compromising influences and loyalties," EC 5–1. Nor does it seem possible that in engaging in this practice that the "interests of other clients," EC 5–1, would not influence the attorney.

■ "The principle underlying Ethical Canon 5 is that a lawyer should not represent parties with differing interests." *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Wagner,* 599 N.W.2d 721, 726 (Iowa 1999). "Differing interests" is defined as "includ[ing] every interest that will adversely affect either the judgment or the loyalty of a lawyer to a client, whether it be a conflicting, inconsistent, diverse, or other interest." Iowa Code of Prof'l Responsibility for Lawyers, Definition 2. "Furthermore, the mere possibility of an adverse effect upon the exercise of free judgment prevents a lawyer from representing clients with opposing interests." *Wagner,* 599 N.W.2d at 726. Zenor's clients—the State and Butler—had differing interests and undertaking representation of both at the same time did more than raise "the mere possibility of an adverse effect upon the exercise of free judgment." *Id.*

This conduct clearly prejudices the administration of justice in violation of DR 1–102(A)(5). On this point we said in *Howe:*

> Although "there is no typical form of conduct that prejudices the administration of justice," actions that have commonly been held to violate this disciplinary rule have hampered "the efficient and proper operation of the courts or of ancillary systems upon which the courts rely . . . ." [S]ome conflict-of-interest rules protect not only the rights of clients, but also "the integrity of the legal system." . . . "[T]he tribunal has an interest in basing its decisionmaking on a full and vigorous presentation of the competing positions." Similarly, "society as a whole has a right to expect that the system not be tainted by resort to hidden and conflicting agendas."

706 N.W.2d at 373 (citations omitted). As in *Howe,* we think the conflict of interest in this case is of the type that adversely affects the administration of justice and erodes the integrity of the legal system.

Zenor's later representation of Butler before the IDOT violated DR 9–101(B), which prohibits a lawyer from accepting "private employment in a matter in which the lawyer had substantial responsibility while a public employee." DR 9–101(B). In *Howe,* city attorney Howe successfully aided a defendant in having the defendant's conviction for a city traffic offense rescinded by then Magistrate Whittenburg. 706 N.W.2d at 372. The magistrate also granted the attorney's motion to order the IDOT to expunge any record of the conviction. *Id.* Later, the IDOT issued the defendant a notice of suspension as a result of his initial conviction. *Id.* Howe wrote to the IDOT in an effort to save the defendant's driving privileges. *Id.* at 372–73 We found that Howe's representation

on the defendant's administrative suspension violated DR 9–101(B). *Id.* at 374.

Acknowledging that the interests of the city and the defendant were not adverse when Howe contacted the IDOT, we nevertheless recognized that there are special considerations that preclude a government lawyer from accepting successive employment on substantially related matters. *Id.* We noted that this type of conflict has been explained as follows:

"[T]he rationale for disqualification is rooted in a concern with the impact that any other rule would have upon the decisions and actions taken by the government lawyer during the course of the earlier representation of the government. Both courts and commentators have expressed the fear that permitting a lawyer to take action in behalf of a government client that later could be to the advantage of a private practice client would present grave dangers that a government lawyer's largely discretionary actions would be wrongly influenced by the temptation to secure private practice employment or to favor parties who might later become private practice clients. . . .

The fear that government lawyers will misuse government power in that way is not idle. Lawyers who represent the government often exercise enormous discretion unchecked by an actual client who oversees the lawyer's work. For that reason a special rule is needed to remove the incentive for government lawyers to take discretionary decisions with an eye cast toward advantages in future, nongovernmental employment."

*Id.* (alteration and omission in original) (quoting Charles W. Wolfram, *Modern Legal Ethics* § 8.10.1, at 458 (practitioner's ed. 1986)). We further noted that Howe's action in representing the defendant before the IDOT was a good example of the type of situation the rule seeks to avoid. *Id.* We can say the same here.

Moreover, three of the six convictions for traffic offenses upon which the IDOT based its designation of Butler as a habitual offender pursuant to Iowa Code section 321.555 occurred in Clay County while Zenor was county attorney. Therefore, Zenor, as Clay County Attorney, had substantial responsibility for the prosecution of those three offenses. The validity of the administrative suspension was directly related to the outcome of the prosecution of those offenses. Based on these facts, Zenor should not have accepted private employment concerning Butler's administrative suspension.

Such conduct also violates DR 1–102(A)(5), which prohibits a lawyer from engaging in conduct prejudicial to the administration of justice. As mentioned, the conflict-of-interest rules we have discussed protect not only the rights of clients, but also the integrity of the legal system. *See Howe,* 706 N.W.2d at 373. Because of these violations, Zenor also violated DR 1–102(A)(1), which prohibits a lawyer from violating a disciplinary rule.

**B. Depew representation.** In count III, the Board alleged that Zenor represented Kenneth Depew on a traffic charge brought by Bradley Howe, the Spencer City Attorney. The traffic charge concerned Depew's alleged violation of conditions concerning a graduated driver's license. The Board also alleged that Zenor appealed the IDOT suspension of Depew's license. Additionally, the Board alleged that Zenor later prosecuted a Clay County speeding ticket against Depew and ultimately was involved in the process of amending the speeding charge to a cowllamp violation.

The Board alleged this conduct violated DR 8–101(B); DR 5–101(A); DR 5–

105(B)–(C); DR 9–101(B); and DR 1–102(A)(1), (5).

On March 9, 2003, a Spencer city police officer charged Depew with violation of the conditions of a graduated driver's license. Howe, the Spencer city attorney, prosecuted this charge to which Depew entered a pro se guilty plea. The IDOT then notified Depew that his license would be suspended. Upon receiving this notice, Depew sought Zenor's assistance. Zenor represented Depew in an administrative appeal from the proposed suspension.

Zenor contacted Howe and the arresting officer, who agreed to set aside the conviction to allow Depew to plead guilty to a non-moving violation. Zenor prepared the motion to set aside the conviction and a letter explaining the sequence of events, both of which he sent to Magistrate Whittenburg. The magistrate entered an order setting aside the conviction and found Depew guilty of a city cowl-lamp violation.

On June 30, 2003, a Clay County deputy sheriff charged Depew with speeding. The Clay County Attorney's office was responsible for the prosecution of that charge.

On July 16, 2003, Zenor wrote to the magistrate stating that the ticketing officer suggested to Depew to go to the county attorney's office and that the officer was agreeable to amending the charge to a non-moving violation. Zenor also stated in the letter that he wished to avoid the appearance of a conflict, in light of the fact that he had done legal work for Depew and Depew's father, but stated that he was following standard office policy on this charge. In the letter, Zenor moved to reduce the charge to a cowl-lamp violation and enclosed a proposed order. The magistrate granted the motion and entered a conviction of a cowl-lamp violation.

Zenor charged Depew and was paid for the work on the first ticket and the administrative appeal. Zenor also charged and was paid for meeting with Depew on the second ticket but testified he refunded that money.

The Commission found that the Board had proven all of its alleged violations concerning Depew. We agree and adopt this finding. The Board made the same allegations concerning Butler. The facts concerning those violations do not differ in principle in any material respects from the facts concerning the violations involving Depew. What we said regarding the Butler matter applies with equal force here.

**■ C. Stevenson and Zenor representation.** In count IV, the Board alleged that Zenor engaged in criminal defense work while serving as a prosecutor. The Board cited two separate cases. One involved William Reed Stevenson and the other involved Zenor's son, Michael Benjamin Zenor. The Stevenson matter was added in an amended complaint.

The Board alleged Zenor's conduct concerning his representation of Stevenson and Michael Benjamin Zenor violated DR 8–101(B) and DR 1–102(A)(1), (5).

On January 13, 1998, a Spencer city police officer charged Stevenson with failure to yield on a left turn in Spencer, Clay County, Iowa. As city attorney, Howe prosecuted this charge, and Zenor negotiated a plea agreement with him, which resulted in a cowl-lamp violation.

On May 4, 1998, a Spencer city police officer charged Zenor's son, Michael Benjamin, with speeding in Spencer, Clay County, Iowa. As city attorney, Howe also prosecuted this charge. Zenor asked Howe to move to amend the speeding charge to a cowl-lamp violation. Howe wrote to Magistrate Whittenburg, stating that the charging officer and Mike Zenor

had reached a plea agreement concerning the ticket issued to Zenor's son. Zenor conceded at the disciplinary hearing that he indeed represented his son in the case.

The Commission found that regarding both cases Zenor violated DR 8-101(B) and DR 1-102(A)(1), (5). We agree and adopt this finding.

The evidence clearly demonstrates that Zenor engaged in the representation of criminal defendants while he was the Clay County Attorney. His actions violated DR 8-101(B), which prohibits county attorneys from engaging in the defense of defendants in criminal matters during the time such attorneys are holding the public office of county attorney. Given this violation, such conduct also violated DR 1-102(A)(1), which prohibits a lawyer from violating a disciplinary rule. Additionally, Zenor's conduct violated DR 1-102(A)(5), which prohibits a lawyer from engaging in conduct that is prejudicial to the administration of justice. As mentioned, a county attorney engaging in criminal defense work prejudices the administration of justice. *See Howe*, 706 N.W.2d at 372, 375 (concluding that city attorney's representation of criminal defendants prosecuted by county attorney violated DR 1-102(A)(5)).

## V. Discipline.

■ In determining the appropriate sanction, we consider " 'the respondent's fitness to continue in the practice of law, deterrence of others from similar conduct, and assurance to the public that the courts will maintain the ethics of the profession.' " *Shinkle*, 698 N.W.2d at 324 (citation omitted) (internal quotation marks omitted). The nature of the alleged violations and protection of the public are additional considerations. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Tofflemire*, 689 N.W.2d 83, 92 (Iowa 2004). We also consider aggravating and mitigating circumstances. *Iowa Supreme Ct. Bd. of Prof'l*

*Ethics & Conduct v. Kallsen*, 670 N.W.2d 161, 164 (Iowa 2003).

■ Attorney discipline is

"not designed to punish, but rather to determine the fitness of an officer of [the] court to continue in that capacity, to insulate the courts and the public from those persons unfit to practice law, to protect the integrity of and the public confidence in our system of justice, and to deter other lawyers from engaging in similar acts or practices."

*Comm. on Prof'l Ethics & Conduct v. Vesole*, 400 N.W.2d 591, 593 (Iowa 1987) (citation omitted).

■ While there is no standard discipline imposed for particular instances of attorney misconduct, reference to similar cases provides guidance. *See Howe*, 706 N.W.2d at 381. Because *Howe* is so similar in the nature of the violations and the mitigating and aggravating circumstances, we think *Howe* weighs heavily in the type and duration of discipline that is warranted here.

Howe and Zenor both violated DR 7-103(A) by charging individuals with cowllamp violations when there was no probable cause to do so. Both simultaneously prosecuted and defended the same charge in violation of DR 5-105(B), which requires a lawyer to decline proffered employment if independent judgment will be or is likely to be adversely affected by accepting the proffered employment. Both also violated DR 1-102(A)(5), which prohibits a lawyer from engaging in conduct prejudicial to the administration of justice. Both represented clients in administrative matters following the attorneys' prosecution of the clients for the very offense triggering agency involvement. This conduct we found to be in violation of DR 9-101(B) (lawyer should not accept private employ-

ment in a matter in which the lawyer had substantial responsibility while a public employee) and in violation of DR 1–102(A)(5), which prohibits a lawyer from engaging in conduct prejudicial to the administration of justice.

Zenor engaged in criminal defense work while serving as county attorney in violation of DR 8–101(B). Howe did not violate this provision because Howe was a city attorney and DR 8–101(B) applies only to county attorneys and assistant county attorneys. That is not to say, however, that Howe was allowed to engage in criminal defense work under *all* circumstances. As we held in *Howe*, there is still the prohibition of DR 9–101(B), which prohibits a lawyer from accepting private employment in a matter in which the lawyer had substantial responsibility while a public employee, a provision we found that Howe had violated. *See Howe*, 706 N.W.2d at 374–75.

Finally, both attorneys violated DR 1–102(A)(1), which prohibits a lawyer from violating a disciplinary rule.

As mentioned, mitigating circumstances in both cases are similar. Neither Howe nor Zenor have been previously disciplined. *See id.* at 366, 379. Moreover, in both cases witnesses testified to their honesty and reputation for being hard-working, trustworthy, forthright, and fair. *See id.* at 366.

Like Howe, we think Zenor's unethical conduct resulted from "his desire to facilitate the disposition of criminal cases to the mutual satisfaction of the defendant and the police officers, and was not done with the thought that he was manipulating the criminal process or would obtain any personal financial benefit." *Id.* at 380.

As in *Howe*, we have considered the fact that Zenor is not the only county attorney who has plea-bargained traffic citations down to cowl-lamp violations. *See id.* But as we did in *Howe*, we do not consider that fact to be a mitigating circumstance. *See id.* We do, however, as we did in *Howe*, consider the fact that we have never before given any guidance on the limitations placed on plea-bargained charges by DR 7–103(A). If this were the only ethical infraction, we might consider a public reprimand a sufficient sanction. *See id.* But as in *Howe*, this regrettably is not the case because like Howe, Zenor has committed serious conflict-of-interest violations that alone warrant suspension. *See id.* at 381.

There are similar aggravating circumstances supporting this sanction. Both have lengthy service as prosecutors. Howe has served as a prosecutor since 1976, *see id.* at 366, 380, while Zenor has served as a prosecutor since 1978. Both should have "known better than to serve clients with divided loyalties." *Id.* at 381. Moreover, in neither case was the unethical conduct an isolated event. *See id.*

In *Howe*, we recognized that "[a]lthough there are no established rules for the duration of a suspension imposed for conflict-of-interest violations, we strive to be consistent from one case to another, despite the factual distinctions that make each case unique." *Id.* We cited a number of disciplinary cases involving conflict-of-interest violations. *See id.* We noted that dispositions in those cases ranged from a public reprimand to a one-year suspension, "depending on the pervasiveness of the prohibited conduct, the existence of other ethical violations, and the presence of mitigating or aggravating factors." *Id.* We concluded that "the pervasiveness of the misconduct [in Howe's] case and the prejudicial impact it has on the bar and the criminal justice system call for a longer period of suspension than the three-month suspension ordered in most of the cited

cases." *Id.* at 382. We therefore suspended Howe's license to practice law in this state indefinitely with no possibility of reinstatement for a period of four months from the date of the opinion. *Id.*

For the same reasons, we conclude Zenor's misconduct calls for the same period of suspension. We therefore suspend Zenor's license to practice law in this state indefinitely with no possibility of reinstatement for a period of four months from the date of the filing of this opinion. This suspension applies to all facets of the practice of law. *See* Iowa Ct. R. 35.12(3). Upon application for reinstatement, Zenor shall have the burden to establish that he has not practiced law during the period of suspension and that he meets all requirements of Iowa Court Rule 35.13. The costs of this proceeding are taxed to Zenor. *See* Iowa Ct. R. 35.25.

**LICENSE SUSPENDED.**

All justices concur except CARTER, J., who concurs specially, LARSON, J., who dissents, and STREIT and WIGGINS, JJ., who take no part.

CARTER, Justice (concurring specially).

Notwithstanding Iowa Ethics Opinion No. 87–13 (February 12, 1988), I am not convinced that discipline should be imposed on the basis of a prosecutor's acceptance of misdemeanor guilty pleas to equipment violations that had not occurred where the alleged offenders agreed to that disposition.

I am satisfied, however, that the other charges against Zenor that were sustained are serious enough to warrant the discipline being imposed by the court.

LARSON, Justice (dissenting).

I dissent from Division III of the majority opinion for the reasons set out in my dissent in *Iowa Supreme Court Attorney Disciplinary Board v. Howe*, 706 N.W.2d 360 (Iowa 2005).