# IN THE SUPREME COURT OF IOWA

No. 43 / 05-2024

Filed April 28, 2006

**IOWA SUPREME COURT ATTORNEY DISCIPLINARY BOARD,**

Complainant,

vs.

**KAY E. DULL**,

Respondent.

On review of the report of the Grievance Commission.

Iowa Supreme Court Grievance Commission recommended a two-year suspension of respondent's license to practice law. **LICENSE SUSPENDED.**

Charles L. Harrington and David J. Grace, Des Moines, for complainant.

Kay E. Dull, Spirit Lake, pro se.

**LAVORATO, Chief Justice.**

The Iowa Supreme Court Board of Professional Ethics and Conduct, now the Iowa Supreme Court Attorney Disciplinary Board, filed a multi-count complaint against attorney Kay E. Dull. The allegations of misconduct fall into four categories: appearing in court while under the influence of alcohol; being convicted of operating a motor vehicle while intoxicated (OWI), third offense; neglecting legal matters entrusted to her; and failing to respond to inquiries from the Board.

Following a hearing, the Grievance Commission of the Iowa Supreme Court found that Dull had violated numerous provisions of the Iowa Code of Professional Responsibility for Lawyers. The Board and Dull filed a stipulation with the Commission for a one-year suspension to run concurrently with a temporary suspension we imposed on March 11, 2003. The Commission rejected the stipulation and recommended that Dull's license to practice law be suspended for two years from the date of its hearing, September 29, 2005. We agree with the Commission's findings and recommendation of a two-year suspension but order that such suspension run from the date of this opinion. We rescind the March 11, 2003 temporary suspension order.

## I. Scope of Review.

We review attorney disciplinary proceedings de novo. *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Zenor*, 707 N.W.2d 176, 178 (Iowa 2005). The Board must establish the charges by a convincing preponderance of the evidence. *Iowa Sup. Ct. Bd. of Prof'l Ethics & Conduct v. Steffes*, 588 N.W.2d 121, 122 (Iowa 1999). "This quantum of proof is 'something less than required in a criminal prosecution, and is something more than is required in a civil proceeding.' " *Id.* (citation omitted).

## II. Facts.

On our de novo review, we find the following facts. Dull has been practicing law as a solo practitioner in northwest Iowa since 1991. From 1986 to 1991, Dull was employed by a law firm.

At the disciplinary hearing, Wanda Rae Smith, Aimee Devereaux, Jeffrey Ryan, and Ellen Langseth, Dull's former clients, testified. Dull appeared but did not testify. The Board offered and the Commission received into evidence twenty-eight exhibits.

**A. Appearing in court while under the influence of alcohol.** On January 28, 2002, Dull appeared for a hearing before Judge James D. Scott while under the influence of alcohol. When the judge questioned Dull about it, she denied she had been drinking. Dull admitted these facts in her answer to the Board's complaint.

**B. Conviction of OWI, third offense.** On December 31, 2002, Dull was convicted of OWI, third offense, in violation of Iowa Code section 321J.2 (2001). The offense occurred on April 25, 2002. A third offense OWI is a class "D" felony. Iowa Code § 321J.2(2)(*c*). Dull's answer to the Board's complaint did not deny these facts. In evidence is a judgment of conviction of that offense.

**C. Neglect.**

**1. Wanda Rae Smith.** In October 2000 Smith hired Dull to obtain a dissolution of marriage for Smith. Smith gave Dull $500 for the legal services necessary to dissolve her marriage. On November 17, 2000, Dull filed Smith's petition for dissolution of marriage.

Smith began calling Dull about the progress of her case. She called Dull daily for about a month before she was ever able to speak with her.

When Smith finally reached Dull, Dull put Smith on hold and never returned to the phone.

Finally, Smith had to hire another attorney to complete the matter for her. The attorney sent Dull a letter requesting Smith's file and an itemized statement of services. Dull never responded. Consequently, the attorney had to copy the court file so the attorney could proceed to obtain the dissolution for Smith.

Once the dissolution was finalized, Smith tried to contact Dull again to recover the money she had paid Dull. Smith talked to Dull once, and Dull told her the bookkeeper would send a check for what was due Smith. Smith never received a check.

**2. Aimee Devereaux.** In January 2002 Dull agreed to represent Devereaux regarding $26,000 in back child support owed by Devereaux's ex-husband. At the time, Devereaux left several original documents with Dull. The documents included a journal regarding child support issues, a divorce decree, and other court orders concerning child support matters. Dull told Devereaux that she had commitments and other issues she was working on at the time but she would get back to Devereaux in about three weeks.

After four or five weeks of no word from Dull, Devereaux tried to call her with no success. Devereaux left messages with a secretary and then with an answering machine. At first, Devereaux called to get a progress report on her case. When Dull did not return Devereaux's calls, Devereaux left messages in an attempt to get her file back so she could engage another lawyer to pursue her case.

Eventually, with the help of the Dickinson County Attorney, Devereaux was able to get her file back in October 2002. Devereaux had not paid Dull any retainer.

**3. L.M.** Dull undertook to represent L.M., a mother in a termination of parental rights appeal. On August 2, 2002, this court dismissed L.M.'s appeal for failure to prosecute the appeal. The dismissal order, which is in evidence, stated that there had been three motions to dismiss filed and each related to Dull's failure to prosecute the appeal. The order further stated, "The appeal has been marked by delay and neglect resulting from appellate counsel's failure to comply with the applicable rules of appellate procedure."

**4. Jeffrey D. Ryan**. In late 2000 Dull began representing Ryan in a modification of a dissolution-of-marriage decree. Ryan sought to modify the decree so that he could have custody of his son. At their first meeting, Ryan gave Dull a $200 retainer. At their second and third meetings, Ryan gave Dull $500 and $300, respectively.

On February 19, 2002, Dull filed a motion to modify the decree. On April 18 trial was set for May 30. In the meantime, Ryan tried to get information from Dull about the action. Ryan asked about approaching court dates, and Dull never responded to those inquiries. Ryan learned of the May 30 trial date from his ex-wife. To make matters worse, Dull did not appear for trial on May 30. Fortunately for Ryan, the court gave him a continuance. Through the efforts of another attorney, Ryan was able to win custody of his son, which cost him $7500 in attorney fees to the new attorney and $5000 to Ryan's ex-wife to induce her to settle.

Ryan filed a claim with the Client Security Commission for the fees he had paid Dull. Ryan was unable to recall how much the Client Security

Commission had paid him, but whatever they paid him did not fully compensate him.

**5. Ellen Langseth.** In April 2002 Langseth's husband filed a petition for dissolution of marriage. Langseth tried to represent herself but then sought Dull's help in August at which time she gave Dull a $500 retainer. Dull was able to get a continuance, and as a result trial was set for October 1.

In the meantime, Langseth's accountant tried several times to fax Dull Langseth's financial information; the accountant was unsuccessful because Dull's fax machine was turned off. Consequently, Dull never prepared and filed an affidavit of financial status on Langseth's behalf as required by a pretrial order.

On the day of trial, Dull did not have the financial information the accountant was trying to fax to her. Concerned about losing her Iowa Public Employees' Retirement System (IPERS) pension because she had no financial statement as required by the pretrial order, Langseth felt compelled to reach a settlement with her husband on her own. She settled with her husband by paying him $2700 in return for her keeping her IPERS pension and some burial plots.

**6. Other cases.** The Board filed two other counts alleging neglect of a client's legal matter. Like the Commission, we find the Board failed in its proof on those allegations.

**C. Failing to respond to Board inquiries.** Dull failed to give any response to notices of inquiry in four of the counts. As to some of the counts, she admitted she received more than one notice of inquiry and that she did not respond. Dull failed to respond in a timely manner to the notices of inquiry from the Board in one of the counts.

### III. Ethical Violations.

**A. Appearing in court while under the influence of alcohol.** The Commission found that Dull violated several disciplinary rules by appearing in court while under the influence of alcohol and in denying she had been drinking. These include DR 7-106(C)(6) (in appearing in a professional capacity before a tribunal, lawyer shall not engage in undignified or discourteous conduct that is degrading to a tribunal), DR 1-102(A)(1) (lawyer shall not violate a disciplinary rule), (4) (lawyer shall not engage in conduct involving dishonesty or misrepresentation), (5) (lawyer shall not engage in conduct that is prejudicial to the administration of justice), and (6) (lawyer shall not engage in any other conduct that adversely reflects on the fitness to practice law).

We have found a violation of DR 7-106(C)(6) when counsel made "outrageously unprofessional" comments in a brief, *Sonksen v. Legal Servs. Corp.*, 389 N.W.2d 386, 388-89 (Iowa 1986), and when counsel lost his temper in chambers, slammed a book on the floor, and used obscene language to criticize the judge's refusal to grant a continuance, *Comm. on Prof'l Ethics & Conduct v. Rauch*, 486 N.W.2d 39, 39-40 (Iowa 1992) (per curiam). We find that Dull's appearance in court while under the influence of alcohol and denial of such condition qualify as a display of undignified or discourteous conduct toward a tribunal in violation of this disciplinary rule. In addition, we find that such conduct also violates DR 1-102(A)(1), (4)-(6). *See Iowa Sup. Ct. Att'y Disciplinary Bd. v. Kadenge*, 706 N.W.2d 403, 409-10 (Iowa 2005) (holding that attorney's conduct in appearing in court while under the influence of alcohol and in telling the judge that he had not been drinking violated DR 1-102(A)(1), (4)-(6)).

**B. Conviction of OWI, third offense.** In its complaint, the Board charged that Dull violated DR 1-102(A) by her conviction of OWI, third offense. The Commission found that Dull had violated DR 1-102(A)(5)-(6), a finding we adopt. *See Iowa Sup. Ct. Bd. of Prof'l Ethics & Conduct v. Marcucci*, 543 N.W.2d 879, 880-81 (Iowa 1996) (holding that a conviction for OWI, third offense, is a violation of DR 1-102(A)(6)). In *Marcucci*, we noted that a felony conviction is "an extremely serious breach of the rules of society" and, under Iowa Code section 602.10122(1), may be grounds for revocation or suspension of a lawyer's license. *Id.* at 882.

Exhibits in evidence indicate that Dull has been convicted of OWI four times with two of those arrests resulting in those convictions coming within a month's time. Less than three months after the arrest for the offense in question, Dull was arrested for OWI, fourth offense. Less than seven months after the arrest in question, Dull was again arrested for OWI, fourth offense. We mention Dull's OWI history to underscore her serious problem with alcohol abuse.

**C. Neglect.** Regarding Smith, Devereaux, L.M., Ryan, and Langseth, the Board charged that Dull violated DR 6-101(A)(3) (lawyer shall not neglect a client's legal matter), DR 7-101(A) (lawyer shall not fail to seek the lawful objectives of a client through reasonably available means), and DR 1-102(A)(1), (5)-(6). Regarding Smith, the Board additionally charged that Dull violated DR 9-102 by not making a timely accounting and refund of the unearned portion of the retainer Smith paid Dull.

In several cases we have discussed what constitutes neglect for purposes of DR 6-101(A)(3). In *Committee on Professional Ethics & Conduct v. Bitter,* we said:

> The rule, however, does not proscribe mere delay—it must amount to "neglect." Application of the rule should require a lawyer to complete legal matters entrusted to him in a reasonably timely manner. If necessary, he should decline additional legal matters if accepting them would result in neglecting pending matters, seek assistance, or disengage himself from these lingering matters and allow another lawyer to complete them.

279 N.W.2d 521, 524 (Iowa 1979).

More specifically, we have detailed what constitutes neglect as

> "indifference and a consistent failure to carry out the obligations which the lawyer has assumed to his client or a conscious disregard for the responsibility owed to the client. The concept of ordinary negligence is different. Neglect usually involves more than a single act or omission. Neglect cannot be found if the acts or omissions complained of were inadvertent or the result of an error of judgment made in good faith."

*Comm. on Prof'l Ethics & Conduct v. Rogers*, 313 N.W.2d 535, 536 (Iowa 1981) (citation omitted).

In the same vein, we said in *Iowa Supreme Court Board of Professional Ethics & Conduct v. Moorman*:

> Neglect is not defined by our rules of ethics, but it has generally been recognized to involve indifference and a consistent failure to perform those obligations that a lawyer has assumed, or a conscious disregard for the responsibilities a lawyer owes to a client. Neglect is more than ordinary negligence and usually involves multiple acts or omissions. It is a form of professional incompetence that often involves procrastination, such as a lawyer doing little or nothing to advance the interests of a client after agreeing to represent the client.

683 N.W.2d 549, 551-52 (Iowa 2004) (citations omitted); *accord Iowa Sup. Ct. Bd. of Prof'l Ethics & Conduct v. McKittrick*, 683 N.W.2d 554, 559 (Iowa 2004).

Dull's actions toward these five clients represent a pattern of indifference and procrastination. In each instance, Dull would take the case and do little or nothing thereafter to advance the interests of the client.

She repeatedly failed to return calls. In one instance when Dull did take a call, she left the client holding and never returned to talk to her. In three of the cases, the client had to retain another attorney to complete the work. In one case, Dull let an appeal be dismissed because of her inaction in failing to respond to three motions to dismiss for failure to prosecute the appeal. In another case, Dull actually showed up for a hearing but was so unprepared because of her repeated failure to communicate with the client and the client's accountant that the client felt compelled to settle to protect her IPERS pension.

We agree with the Commission and find that Dull's conduct towards these five clients constitutes neglect in violation of DR 6-101(A)(3) and also constitutes a violation of DR 7-101(A), and DR 1-102(A)(1), (5)-(6). Regarding Smith, we agree with the Commission and find that Dull violated DR 9-102 when she failed to make a timely accounting and refund of the unearned portion of the retainer that Smith paid Dull.

**D. Failing to respond to Board inquiries.** The Commission found and we agree that Dull's failure to respond to notices from the Board regarding complaints constitutes a violation of DR 1-102(A)(5)-(6) as charged by the Board. *See Iowa Sup. Ct. Att'y Disciplinary Bd. v. Moonen*, 706 N.W.2d 391, 399-400 (Iowa 2005) (holding that failure to respond to Board inquiries is a violation of DR 1-102(A)(5)-(6)).

**IV. Discipline.**

In determining the appropriate sanction in attorney disciplinary cases, we focus on the attorney's " ' "fitness to continue in the practice of law, deterrence of others from similar conduct, and assurance to the public that the courts will maintain the ethics of the profession." ' " *Zenor*, 707 N.W.2d at 185 (citations omitted). Additional considerations include the

nature of the violations and aggravating and mitigating circumstances. *Id.* While we recognize that there is no standard discipline imposed for particular instances of attorney misconduct, we look to similar cases for guidance. *Id.*

In those cases in which neglect is the principal violation, discipline generally ranges from a public reprimand to a six-month suspension. *Kadenge*, 706 N.W.2d at 410. We have, however, imposed a one-year suspension for multiple instances of neglect of client's legal matters that resulted in client harm, *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Maxwell*, 705 N.W.2d 477, 480-81 (Iowa 2005), and a two-year suspension in a case involving multiple instances of neglect in which clients suffered harm, *Moorman*, 683 N.W.2d at 552-53.

Here at least one client—L.M.—was directly harmed by Dull's neglect. L.M. lost her opportunity to appeal the termination of her parental rights due to Dull's failure to prosecute the appeal. In Ryan's case, Dull's neglect delayed his custody suit not to mention the fact that Dull's actions caused him anxiety and frustration. Langseth felt compelled to reach a settlement she otherwise might have avoided had Dull been prepared. Devereaux had to have legal help just to get her file back. Smith's new attorney had to copy her court file to secure the dissolution decree because Dull would not respond to the attorney's letter. Smith, Devereaux, and Ryan had to hire new lawyers to complete the work Dull agreed to do. Moreover, Dull never responded to Smith when she asked for a return of the unearned retainer. Ryan went so far as to file a claim with the Client Security Commission, which paid some of the unearned retainer. These repeated instances of neglect constitute aggravating circumstances for us to consider in

determining discipline. *Moorman*, 683 N.W.2d at 553. They alone warrant suspension for a considerable period of time.

Appearing in court in an intoxicated condition is a serious violation of our code of ethics. *Kadenge*, 706 N.W.2d at 410. We noted in *Kadenge* that in other jurisdictions sanctions for similar conduct have ranged from public reprimand to disbarment. *Id.* Dull compounded this serious violation by lying to the judge when she was asked if she had been drinking.

Dull stands convicted of OWI, third offense, a felony. In our determination of appropriate discipline, we consider only this conviction because that is the only one the Board charged. The felony conviction alone could warrant revocation. *See* Iowa Code §§ 602.10121, 602.10122(1). In *Marcucci*, this court imposed a six-month suspension. 543 N.W.2d at 883. In that case, the only matter before the Commission was the attorney's conviction of felony OWI. *Id.* at 880-81. In addition, the record showed that the attorney continued to be an effective advocate notwithstanding his problems with alcohol abuse, a mitigating factor in the attorney's favor. *Id.* at 881.

Finally, there is the matter of Dull's failure to respond to Board inquiries. Dull's attitude in this respect reflects disdain for the disciplinary system. We have imposed a reprimand when such failure was the only misconduct considered. *See Comm. on Prof'l Ethics & Conduct v. Stienstra*, 390 N.W.2d 135, 136 (Iowa 1986).

Dull has been disciplined before—a reprimand in 2001 for neglect of a client's legal matter and for failure to provide the Board with a timely response. The reprimand is an aggravating circumstance that we consider in our determination of discipline. *Iowa Sup. Ct. Bd. of Prof'l Ethics & Conduct v. Pracht*, 656 N.W.2d 123, 126 (Iowa 2003). Another aggravating

factor is experience in the practice of law. *Iowa Sup. Ct. Bd. of Prof'l Ethics & Conduct v. Wagner*, 599 N.W.2d 721, 730 (Iowa 1999). Dull has practiced law since 1986 and should have been well aware that her actions constituted serious breaches of our ethical rules.

Dull stated in an answer to a Board interrogatory filed in May 2005 that she does not intend to practice law again in this state. In the same answer Dull stated she has serious health problems. She disclosed she has been diagnosed with end-stage liver disease and is awaiting a liver transplant. According to Dull, the damage to her liver creates a condition known as encephalopathy. The symptoms of this condition, she says, include confusion, fatigue, memory failure, lack of focus, and insomnia. However sympathetic we may feel, her state of health will not excuse her ethical violations because "it is our duty to protect the public we serve from lawyers rendered unfit from any cause." *Comm. on Prof'l Ethics & Conduct v. Paulos*, 410 N.W.2d 260, 261 (Iowa 1987). However, we can and do consider Dull's state of health in determining a sanction. *See Iowa Sup. Ct. Att'y Disciplinary Bd. v. McCann*, __ N.W.2d __, __ (Iowa 2006).

In answer to another interrogatory, Dull stated that she (1) had not consumed alcohol for nine months, (2) has completed an inpatient alcohol treatment program, and (3) regularly attends Alcoholics Anonymous meetings. Like the Commission, we commend Dull for her efforts to maintain sobriety, for her recognition that she suffers from alcoholism, and for her apparent acceptance of her present situation by indicating she does not intend to practice law in Iowa.

When assessing the multiple violations and the aggravating and mitigating circumstances we have mentioned, we conclude the Commission's recommendation of a two-year suspension is appropriate.

However, we do not agree with the Commission's recommendation that the suspension should run from September 29, 2005, the date of the disciplinary hearing. Rather we conclude the suspension should run from the date of this opinion.

In a case strikingly similar to this one, we imposed a sanction of eighteen months for neglect of legal matters, mishandling a client trust account, misrepresentations to another member of the bar, misdemeanor conviction for public intoxication arising out of a court appearance, denying to the court that he had been drinking, and failing to respond to Board inquiries. *Kadenge*, 706 N.W.2d at 405, 409. The material difference is that Kadenge was not convicted of a felony, and had no prior disciplinary violations. *Id.* at 407, 410-11.

**V. Disposition.**

We suspend Dull's license to practice law in this state indefinitely with no possibility of reinstatement for two years from the date of this opinion. The suspension applies to all facets of the practice of law. *See* Iowa Ct. R. 35.12. Dull has been temporarily suspended from the practice of law since March 11, 2003 because of her OWI, third offense, conviction. The suspension was ordered pursuant to Iowa Court Rule 35.14. We now rescind that order. In imposing the two-year suspension, we reject the Board's and Dull's stipulation for a one-year suspension to run concurrently with the March 11, 2003 suspension. *See Comm. on Prof'l Ethics & Conduct v. Nadler*, 467 N.W.2d 250, 254-55 (Iowa 1991).

Upon any application for reinstatement, Dull must establish that she has not practiced law during the suspension period, she has in all ways complied with the requirements of Iowa Court Rule 35.13, and she has refunded unearned fees to those clients mentioned in this opinion. Dull

must also provide this court with an evaluation by a licensed health care professional verifying her fitness to practice law. Before obtaining this evaluation, Dull shall submit the names of the proposed evaluators and the nature of the evaluation to the Board for its prior approval. Dull shall also comply with the notification requirements of Iowa Court Rule 35.21.

Costs are taxed to Dull pursuant to Iowa Court Rule 35.25.

**LICENSE SUSPENDED.**