# IN THE SUPREME COURT OF IOWA

No. 129 / 06-1062

Filed February 16, 2007

**IOWA SUPREME COURT ATTORNEY
DISCIPLINARY BOARD,**

      Appellee,

vs.

**MARTHA JOHNSON,**

      Appellant.

---

On review of the report of the Grievance Commission.

The Iowa Supreme Court Grievance Commission recommends a suspension of Johnson's license for a period of six months. A public reprimand is imposed. **RESPONDENT REPRIMANDED.**

Robert C. Oberbillig, Des Moines, for appellant.

Charles L. Harrington and Wendell J. Harms, Des Moines, for appellee.

**Hecht, Justice.**

The Grievance Commission has recommended attorney Martha Johnson's license to practice law in Iowa be suspended for six months for violations of DR 1-102(A)(1) (a lawyer shall not violate a disciplinary rule), DR 9-101(B) (a lawyer shall not accept private employment in a matter in which she had "substantial responsibility" while serving as a public employee), and DR 1-102(A)(5) (a lawyer shall not engage in conduct that is prejudicial to the administration of justice). Although we agree with the Commission's finding that Johnson violated these provisions of the Iowa Code of Professional Responsibility for Lawyers, we conclude the appropriate sanction in this case is a public reprimand.

### I.  Factual and Procedural Background.

Johnson was first licensed to practice law in 1994. She engaged in private practice in Des Moines until January of 1999, when she was hired as an assistant county attorney in the juvenile division of the Polk County Attorney's office. In August of 2001, she was assigned to work as the attorney in the intake unit within that office. In that capacity, she reviewed and signed petitions in emergency removal and child-in-need-of-assistance cases, appeared as counsel for the State in contested removal hearings, and advised the Department of Human Services in such cases. In the summer of 2002, she applied and was interviewed for the position of executive director of the Youth Law Center (YLC), a non-profit organization that employs attorneys who are available for appointment as guardians ad litem in Polk County juvenile cases.

Before offering the job to Johnson, the YLC's board of directors, including three seasoned attorneys, assessed the potential for a conflict of interest arising from the interface between Johnson's past work as an

assistant county attorney and the duties of the YLC's executive director. The directors contemplated, but did not make, a request of the Iowa State Bar Association's Committee on Professional Ethics and Standards for an ethics opinion on the question of whether Johnson's past employment would disqualify her from representing the YLC's clients. The board concluded Johnson would be able to avoid conflicts of interest for herself and the YLC if she and other YLC lawyers prospectively avoided involvement in cases in which she had been substantially involved previously as an assistant county attorney and offered the position to her.[1]

Johnson made inquiries in an effort to determine whether acceptance of employment with the YLC would create substantial conflict of interest problems. She first consulted Ray Blase, her supervisor in the juvenile division of the county attorney's office. Blase suggested Johnson should request a waiver of any conflicts of interest from the Department of Human Services, the agency Johnson frequently advised during her service as assistant county attorney. Johnson also requested a meeting with the four judges who presided in Polk County juvenile court cases to discuss how potential conflicts of interest might be dealt with if she should be hired as the YLC's director.[2] Although such a joint meeting with judges was never held, Johnson did discuss with at least two other juvenile court judges her

---

[1]We have approved the deployment of so-called "Chinese Walls" as a means of overcoming imputed disqualification of associates of attorneys affected by a conflict of interest in certain circumstances. *See Doe v. Perry Cmty. Sch. Dist.*, 650 N.W.2d 594, 601 (Iowa 2002).

[2]In a conversation with a district associate judge, Johnson requested a meeting with juvenile court judges to discuss how potential conflicts of interest might be managed if she were to accept employment with the Center. The judge declined to participate in such a meeting on the ground that the court might be required to rule on conflict of interest issues that could arise if Johnson accepted employment with the Center. The judge also recommended that Johnson seek an opinion from the Bar Association's Committee on Professional Ethics and Standards.

intention to apply for the position. Those judges were very supportive of the idea and encouraged Johnson to pursue it. Johnson also spoke to an attorney employed by the Board of Professional Ethics and Conduct, who noted conflict of interest issues are evaluated on a case-by-case basis and observed generally that a conflict of interest could arise if Johnson were to perform legal services as an employee of the YLC in cases in which she had substantial responsibility as an assistant county attorney.

Johnson accepted the YLC's offer of employment. Before she began work for the YLC in January of 2003, Johnson reviewed certain ethics opinions issued by the Bar Association's Committee on Professional Ethics and Standards and read opinions of this court addressing conflicts of interest. She also took other measures intended to shield her from cases that might present a conflict of interest. Johnson prepared and delivered to the YLC a list of cases in which she believed she had assumed substantial responsibility as an assistant county attorney. She also prepared a form for use by other YLC attorneys to prompt their vigilance for and identification of any cases handled by Johnson in her former employment. Consistent with Mr. Blase's suggestion, Johnson requested and received a letter in which DHS purportedly waived any conflict of interest arising as a consequence of her former employment and her new position with the YLC.[3]

Johnson quickly immersed herself in the management of the YLC and its substantial caseload. Unfortunately, her pre-employment attentiveness to the potential for conflicts of interest waned. Johnson and the YLC failed

---

[3]We subsequently decided that a conflict of interest of the type alleged against Johnson in this case "may not be waived." *See Sorci v. Iowa Dist. Ct.*, 671 N.W.2d 482, 494 (Iowa 2003). We nonetheless make reference to the letter because it provides background information evidencing Johnson's pre-employment concerns about potential conflicts of interest and her intention to address them before they arose. We acknowledge that under the Iowa Rules of Professional Conduct, which became effective July 1, 2005, consent to a conflict may be obtained.

to implement an effective Chinese Wall to shield her from juvenile cases with which she had been substantially involved as an assistant county attorney. She appeared at hearings in March and May of 2003 as guardian ad litem in two separate juvenile cases in which she previously had substantial involvement as an assistant county attorney.[4]

Although the State did not object to Johnson's involvement as guardian ad litem in those two cases, counsel for parents eventually did claim Johnson and her lawyer-colleagues at the YLC should be disqualified from involvement in cases in which Johnson had been substantially involved as an assistant county attorney. After hearings on the issue were held in Polk County District Court, Johnson and the YLC's other lawyers were disqualified in numerous cases.[5] The district court found disqualification was required in those cases because case-by-case litigation of the conflict of interest issue would "threaten[] the timely disposition and finality of hundreds of [juvenile] cases in Polk County." Johnson subsequently resigned her employment with the YLC.

The district court reported Johnson's disqualification based on conflict of interest to the Board of Professional Ethics and Conduct. An investigation was undertaken, and the Board notified Johnson on March 18, 2004 that she would be

> publicly reprimanded for undertaking employment with the Youth Law Center, a private non-profit organization representing juveniles in Child in Need of Assistance matters, notwithstanding [her] "substantial responsibility" for such matters on behalf of the State while a member of the [Polk]

---

[4]In each case, Johnson had signed a petition as an assistant county attorney alleging one or more children were in need of assistance.

[5]An account of the history of the controversy and litigation surrounding Johnson's conflict of interest and the several orders disqualifying Johnson and the YLC's other employee-lawyers in certain juvenile cases may be found in our decision in *Sorci*, 671 N.W.2d at 485-88, and will not be repeated here.

County Attorney's Office, contrary to DR 9-101(B) of the Iowa
Code of Professional Responsibility for Lawyers.

On April 15, 2004, Johnson took written exception to the public reprimand and asserted she had accepted the position with the YLC in good faith after undertaking the measures recounted above. After reviewing Johnson's exception to the public reprimand, the Board notified her by letter dated June 10, 2004 of its intent to file a complaint with the Grievance Commission. The Commission held a hearing and found Johnson violated DR 9-101(B) (accepting private employment in a matter in which she had substantial responsibility as an attorney for a governmental entity), DR 1-102(A)(5) (engaging in conduct prejudicial to the administration of justice), and DR 1-102(A)(1) (violating a disciplinary rule), and recommended suspension of Johnson's license to practice law for a period of six months.

## II.  Scope and Standards of Review.

Our review of attorney disciplinary proceedings is de novo. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Walker*, 712 N.W.2d 683, 684 (Iowa 2006) (citation omitted). We give respectful consideration to the Commission's factual findings and discipline recommendations, but we are not bound by them. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Winkel*, 599 N.W.2d 456, 460 (Iowa 1999) (citation omitted). The Board must prove attorney misconduct by a convincing preponderance of the evidence. *Walker*, 712 N.W.2d at 684 (citation omitted). This burden is less than proof beyond a reasonable doubt, but more than the preponderance standard generally applied in civil cases. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Lett*, 674 N.W.2d 139, 142 (Iowa 2004) (citation omitted). If misconduct is proved, we "may impose a lesser or greater sanction than the discipline recommended by the grievance commission." *Id.* (citations omitted).

**III. Discussion**.

The professional conduct at issue in this case occurred in 2003. We must therefore determine whether Johnson violated provisions of the Iowa Code of Professional Responsibility for Lawyers which were then extant.[6]

In *Sorci*, we concluded a lawyer assumes substantial responsibility as an attorney when in the course of representing a client, she gives legal advice, signs a pleading, or appears at a hearing. *Sorci v. Iowa Dist. Ct.*, 671 N.W.2d 482, 486 (Iowa 2003). We find, by a convincing preponderance of the evidence, that Johnson signed CINA petitions as an assistant county attorney in two juvenile cases, and she later appeared as guardian ad litem for the children whose interests were at stake in those cases. We conclude Johnson's conduct did violate DR 9-101(B) and DR 1-102(A)(1). Because her conduct provoked significant disruption of the administration of numerous juvenile cases in Polk County, *see Sorci*, 671 N.W.2d at 487-89, we also find Johnson engaged in conduct prejudicial to the administration of justice in violation of DR 1-102(A)(5).

Johnson does not seriously take issue with the proposition that she had substantial responsibility as an assistant county attorney in CINA cases in which she signed pleadings. She urges us to conclude nonetheless that she did not violate DR 9-101(B) because (1) her acceptance of employment with the YLC was not unethical; (2) as an assistant county attorney and as a guardian ad litem, her consistent objective was to promote the best interests of the children who were the subjects of juvenile cases, (3) consistent with court rules and customary practice, all information gained in juvenile cases as an attorney for the State was routinely shared with all parties and therefore not confidential, (4) DHS

---

[6]The Iowa Rules of Professional Conduct became effective July 1, 2005.

waived in writing any conflict of interest, and (5) she acted in good faith by exploring the potential for conflicts of interest before accepting employment with the Center and by taking reasonable measures during that employment to avoid conflicts of interest. We conclude, however, that these facts do not preclude our determination that a violation of our ethical rules occurred.

*1. Accepting employment with YLC.* We agree with Johnson's assertion that her acceptance of her employment with YLC did not constitute a violation of our Rules of Professional Responsibility. But her employment as the executive director of the YLC is not the ground of the alleged ethical violation in this case. It is Johnson's failure to avoid involvement as a guardian ad litem in cases in which she had substantial responsibility as an assistant county attorney which forms the basis for the sanction urged by the Board and recommended by the Commission in this case.

*2. Best interests of clients.* It is undisputed that the best interests of children must be a primary concern to both attorneys representing the State and those who serve as guardians ad litem. In this broad sense, the objectives of counsel for the State and guardians ad litem are consistent in juvenile court proceedings. But we are not persuaded that the apparent consistency of the parties' objectives precludes a sanction for violation of DR 9-101(B) and DR 1-102(A)(1) here, for in a narrower sense the State's conception of a child's best interests may diverge from that of the child who may reasonably urge his guardian ad litem to advance an outcome not preferred by the State. The potential for divergent understandings of the best interests of the parties in juvenile cases persuades us to reject Johnson's contention that, as a matter of law, the commonality of the

former and latter clients' interests precludes the finding of an ethical violation under the circumstances of this case. Indeed, DR 9-101(B) categorically prohibits the acceptance of private employment in matters in which Johnson previously had substantial responsibility as an attorney for a governmental entity. The rule makes no exceptions for juvenile cases or other proceedings in which a lawyer's former and current clients may have some broadly stated common objectives or interests. We are not inclined to dilute the important purposes of the categorical prohibition by recognizing the "clients' best interests exception" advanced by Johnson.

3. *Confidences of clients.* Johnson urges us to conclude she did not violate ethical rules in this case because any information to which she became privy as an assistant county attorney in juvenile cases was routinely shared with other attorneys and their clients. She notes that the new Iowa Rules of Professional Conduct restrict a lawyer who has information that she knows is "confidential government information about a person" from representing "a private client whose interests are adverse to that person in a matter in which the information could be used to the material disadvantage of that person." Iowa R. of Prof'l Conduct 32:1.11(c) (2005). Although we have no occasion in this case to interpret or apply this new rule, which was adopted after Johnson provided legal services as a guardian ad litem in the two juvenile cases referred to above, we note that the rule's plain language does not confine the prohibition against representation to matters in which a former government lawyer gained confidential information about a person. *See* Iowa R. of Prof'l Conduct 32:1.11(a)(2). Similarly, the plain language of DR 9-101(B) that we apply in this case makes no exception allowing a former public employee-lawyer to accept private employment in a case in which she had substantial

responsibility as a government lawyer so long as she gained no confidential information in the former representation.

*4. Consent of the former client.* Johnson contends we should find no violation of DR 9-101(B) and DR 1-102(A)(1) because she obtained DHS's consent in writing to her representation of juveniles in the cases that form the basis for the ethical complaint against her. She urges us to consider that new rule 32:1.11 expressly authorizes a lawyer who was formerly employed by the government to represent a client in a matter notwithstanding the lawyer's prior substantial participation on behalf of the government in connection with the same matter if the appropriate government agency gives its informed written consent to the representation. *See* Iowa R. of Prof'l Conduct 32:1.11(a)(2). As we have already noted, the new rule is not controlling in this case. Furthermore, we have previously decided consistent with a formal opinion of the Iowa Supreme Court Board of Professional Ethics and Conduct that under the rules prevailing at the time of Johnson's conduct, the conflict of interest was not subject to waiver. *Sorci*, 671 N.W.2d at 494 (citing Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct, Formal Op. 98-09 (1998)).

*5. Johnson's good faith.* Johnson posits that we should find no ethical infraction in this case because she believed in good faith that her conduct did not violate the rules in question. To her credit, she considered the potential conflicts of interest that could arise if she accepted employment with the YLC. However, Johnson cites no authority for the proposition that a violation of DR 9-101(B) and DR 1-102(A)(1) cannot be found in the absence of a lawyer-actor's bad faith, and we find no merit in it. We do, however, consider Johnson's good faith as a circumstance in our determination of the appropriate sanction in this case.

**IV. Sanction Imposed**.

Having found that Johnson's conduct violated certain ethical rules, we next consider the appropriate sanction. "Any violation of the Code of Professional Responsibility necessarily reflects adversely on the fitness of an attorney to practice law." *Comm. on Prof'l Ethics & Conduct v. Durham*, 279 N.W.2d 280, 285 (Iowa 1979). In determining the sanction, "we consider the respondent's fitness to continue in the practice of law, deterrence of others from similar conduct, and the assurance to the public that the courts will maintain the ethics of the profession." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Zenor*, 707 N.W.2d 176, 185 (Iowa 2005) (citation omitted) (internal quotation marks omitted). We also consider any aggravating and mitigating circumstances. *Id.*

We find that Johnson is fit to continue in the practice of law. The record discloses that she is well-regarded by judicial officers and fellow members of the bar as a competent lawyer who was willing and able to competently undertake difficult juvenile cases. We do not believe under the circumstances of this case that a license suspension is necessary to deter similar future conduct. Indeed, we conclude a public reprimand will amply assure the public that the courts will maintain the ethical standard for lawyers who leave government service and undertake private representation of parties in matters for which the lawyers had substantial responsibility in their former government service. Our decision to impose a public reprimand rather than the suspension recommended by the Commission is also strongly influenced by the fact that Johnson has no prior disciplinary record, and by the fact that she considered and took some steps to avoid

potential conflicts before she began her employment with the YLC. Costs shall be taxed to Johnson.

**RESPONDENT REPRIMANDED**.

All justices concur except Appel, J., who takes no part.