**IOWA SUPREME COURT BOARD OF PROFESSIONAL ETHICS AND CONDUCT, Complainant,**

v.

**Michael Charles VINYARD, Respondent.**

No. 02–1596.

Supreme Court of Iowa.

Jan. 23, 2003.

Norman G. Bastemeyer and Charles L. Harrington, Des Moines, for complainant.

Peter Riley, Cedar Rapids, for respondent.

STREIT, Justice.

Michael C. Vinyard, an Iowa attorney, was convicted of fourteen counts of mail fraud and twelve counts of money laundering. Following Vinyard's felony convictions, the Iowa Supreme Court Board of Professional Ethics and Conduct charged Vinyard with violating several ethics rules. The Grievance Commission recommended we revoke Vinyard's license to practice law. Our review is required by Iowa Court Rule 35.10 (2002). We concur with the Commission's findings and recommendation.

## I. Background and Facts

Michael C. Vinyard has been a practicing attorney since 1969 in Ottumwa, Iowa. Vinyard and his brother, James Vinyard (hereinafter James), devised a scheme to defraud James's employer. The scheme involved the creation of a plastics brokerage company which the brothers used to overcharge James's employer and keep the "mark-up" for themselves. Their misconduct culminated with Vinyard's indictment on thirty-two counts of felonious mail fraud and money laundering in the United States District Court for the District of South Carolina. Later, the United States Attorney dismissed six of these counts. In August 1999, after a federal trial, a jury found Vinyard guilty of fourteen counts of mail fraud and twelve counts of money laundering in violation of 18 U.S.C. §§ 1341, 1346, 1956(a)(1)(B)(i) and (2). 18 U.S.C. § 1341 provides:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by

means of false or fraudulent pretenses, representations, or promises . . . for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service . . . shall be fined . . . or imprisoned . . . or both.

18 U.S.C. § 1341. Vinyard was also found guilty of money laundering:

> Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity—
>
> > (B) knowing that the transaction is designed in whole or in part—
> >
> > > (i) to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity . . . ,
>
> shall be sentenced to a fine of not more than $500,000 or twice the value of the property involved in the transaction, whichever is greater, or imprisonment for not more than twenty years, or both.

18 U.S.C. § 1956(a)(1)(B)(i). Vinyard was sentenced to concurrent terms of imprisonment of seventy months and ordered to pay a special assessment of $2600 plus restitution of over $1,418,000. Vinyard is currently serving his sentence in a federal prison in South Dakota.

In 2001, the United States Court of Appeals for the Fourth Circuit affirmed Vinyard's convictions and summarized his misconduct as follows.

> James was employed in South Carolina by the Sonoco Products Corporation ("Sonoco"). Sonoco's high density film products division, which manufactures plastic grocery bags, had decided to explore opportunities to use recycled materials, and had installed James as Recycling Manager. . . . [Sonoco] directed James to employ an independent broker to research potential sources of recycled resins and to negotiate deals for Sonoco on a confidential basis. Rather than locate such a broker, James devised a more personally lucrative solution: the creation of his own brokerage. James enlisted the services of his brother, [Vinyard], and together they created the entity Charles Stewart Enterprises ("CSE"). . . .
>
> James took charge of CSE's operations from its inception, while administrative matters were relegated to [Vinyard]. [Vinyard]'s responsibilities consisted chiefly of providing CSE with office space in his law firm, arranging the installation of separate phone and fax lines, and retaining secretarial and accounting services. Under James's direction, CSE presented itself to Sonoco and plastic vendors as an independent broker; it purchased recycled resins from various vendors and sold them to Sonoco, collecting a commission on each sale. Sonoco was led to believe that Charles Stewart was an actual person at CSE and also that CSE was a legitimate broker of recycled plastic pellets that could provide such pellets at the lowest possible price. In addition to its brokerage operations, CSE became involved in the enterprise of collecting used grocery bags from Sonoco customers and selling them for an unlawful commission (i.e., a kickback) to companies that would reuse or recycle them. Between 1991 and 1997, Sonoco paid CSE over $12 million, yielding the brokerage a net profit of more than $2.8 million. . . .
>
> Both James and [Vinyard] funneled their CSE earnings through another en-

tity, Birchwood Enterprises, so that there would be no mention of CSE on their income tax returns....

James also testified that he had informed his brother, before incorporating CSE, that "if Sonoco ever found out about this, [James] would get fired." There was sufficient evidence for the jury to conclude that [Vinyard] was involved in, and willingly assisted in, his brother's fraud scheme to breach his duty of loyalty to Sonoco.

The Fourth Circuit further found two of Vinyard's secretaries involved with CSE business received large bonuses or severance pay, which the court found Vinyard gave them as "hush money." In 2002, the United States Supreme Court denied Vinyard's petition for writ of certiorari.

In October 2001, the Iowa Supreme Court Board of Professional Ethics and Conduct filed a complaint alleging Vinyard violated the following rules of professional responsibility: DR 1–102(A)(1) (lawyer shall not violate a disciplinary rule); DR 1–102(A)(3) (lawyer shall not engage in illegal conduct involving moral turpitude); DR 1–102(A)(4) (lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation); DR 1–102(A)(5) (lawyer shall not engage in conduct that is prejudicial to the administration of justice); and DR 1–102(A)(6) (lawyer shall not engage in conduct that adversely reflects on one's fitness to practice law). The Commission recommended revocation of Vinyard's license to practice law.

## II. Scope of Review

We review attorney disciplinary proceedings de novo. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Rauch,* 650 N.W.2d 574, 576 (Iowa 2002); Iowa Ct. R. 35.10. We give respectful consideration to the Grievance Commission's findings and recommendations, but are not bound by them. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Grotewold,* 642 N.W.2d 288, 293 (Iowa 2002). The Board has the burden to prove misconduct by a convincing preponderance of the evidence. *Id.*

## III. Misconduct

Vinyard's federal felony conviction is conclusive evidence of his misconduct warranting revocation. *See* Iowa Code § 602.10122(1). Vinyard violated DR 1–102(A)(1) prohibiting a lawyer from violating the ethical rules. Because Vinyard has been found guilty of the felonies of money laundering and mail fraud— crimes involving dishonest intent—he violated DR 1–102(A)(3) prohibiting a lawyer from engaging in conduct involving moral turpitude. *See Comm. on Prof'l Ethics & Conduct v. Cody,* 412 N.W.2d 637, 639 (Iowa 1987) ("When applied in the context of attorney misconduct, the term 'moral turpitude' has been held to connote fraudulent or dishonest intent."). Conviction of these crimes constitutes violation of DR 1–102(A)(5) prohibiting a lawyer from engaging in conduct prejudicial to the administration of justice. *See Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Lyzenga,* 619 N.W.2d 327, 330 (Iowa 2000) (lawyer's violation of essential criminal laws is prejudicial to the administration of justice, in part, because it results in lay person's loss of respect for the law). Vinyard's perpetration of fraud violated DR 1–102(A)(4) and (6) providing a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation or conduct adversely reflecting on one's fitness to practice law. *See Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Morris,* 604 N.W.2d 653, 655 (Iowa 2000) (conviction in state court of fourth degree fraudulent practice); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Palmer,* 563 N.W.2d

634, 635 (Iowa 1997) (federal conviction of fraudulent use of credit card); *Comm. on Prof'l Ethics & Conduct v. Shepler*, 519 N.W.2d 92, 93 (Iowa 1994).

## IV. Sanction

In determining the appropriate sanction, we consider the nature of the violations, "the need for deterrence, protection of the public, maintenance of the reputation of the bar as a whole, and the respondent's fitness to continue to practice law." *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Stein*, 603 N.W.2d 574, 576 (Iowa 1999). When we examine a lawyer's fitness to practice law, we consider more than legal competence. A lawyer must avoid criminal conduct that undermines the public's confidence in the legal profession. *See Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Marcucci*, 543 N.W.2d 879, 882 (Iowa 1996). A lawyer's conviction of a crime reflects adversely both on the offending lawyer and all other lawyers. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Neuwoehner*, 595 N.W.2d 797, 798 (Iowa 1999). Consideration of both aggravating and mitigating factors is also appropriate in fashioning the appropriate sanction. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Ruth*, 636 N.W.2d 86, 89 (Iowa 2001).

We have not before considered the crimes of mail fraud and money laundering within the context of an attorney disciplinary action. However, we have consistently imposed harsh sanctions for a lawyer's commission of criminal conduct involving fraud and dishonesty. *See, e.g., Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Schatz*, 595 N.W.2d 794, 796 (Iowa 1999) (revocation after two criminal felony convictions for theft and income tax evasion); *Palmer*, 563 N.W.2d at 635 (revocation after federal felony conviction for fraudulent use of a credit card); *Iowa Supreme*

*Ct. Bd. of Prof'l Ethics & Conduct v. Romeo*, 554 N.W.2d 552, 554–55 (Iowa 1996) (three-year suspension after state conviction of record-tampering, an aggravated misdemeanor involving intent to deceive); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Sylvester*, 548 N.W.2d 144, 147 (Iowa 1996) (revocation after state conviction of second degree theft, a class D felony); *Comm. on Prof'l Ethics & Conduct v. Humphreys*, 524 N.W.2d 396, 399–400 (Iowa 1994) (revocation after federal conviction for income tax violation, commingling client funds, and improper relationship with client).

The fact that Vinyard has already been in one sense punished by virtue of his felony convictions does not mitigate the need for a professional sanction. *See Comm. on Prof'l Ethics & Conduct v. Owens*, 427 N.W.2d 463–464 (Iowa 1988). Though this is Vinyard's first attorney disciplinary action, this mitigating factor is overpowered by the serious nature of several other aggravating factors. First, Vinyard's fraudulent scheme involved harm or the potential for harm to the victim, i.e., Sonoco. *See Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Hohenadel*, 634 N.W.2d 652, 656 (Iowa 2001); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Fay*, 619 N.W.2d 321, 326 (Iowa 2000); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Wagner*, 599 N.W.2d 721, 730 (Iowa 1999). Sonoco's and its insurance carrier's loss was determined to be over $2,800,000. Second, Vinyard had over twenty years experience in the practice of law at the time of his misconduct. We have before held substantial experience in the practice of law to be an aggravating factor. *See Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Gallner*, 621 N.W.2d 183, 188 (Iowa 2001); *Wagner*, 599 N.W.2d at 730. Third, at the very heart of Vinyard's misconduct existed dishonesty.

Where felony convictions have directly involved dishonest conduct, we have revoked the attorney's license to practice law. *Palmer,* 563 N.W.2d at 635. Finally, Vinyard is not guilty of an isolated event of unethical conduct. Rather he engaged in a lengthy pattern of misconduct involving mail fraud and money laundering all for the sake of personal, pecuniary gain. *Gallner,* 621 N.W.2d at 187 (pattern of misconduct warrants enhanced sanction) (citing *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Lesyshen,* 585 N.W.2d 281, 288 (Iowa 1998)).

 It appears the scheme to defraud James's employer did not originate with Vinyard. Rather, he became involved only after his brother devised the plan and assigned a role to Vinyard. This is analogous to situations where a client initiates criminal conduct in which the attorney later participates. The fact that the lawyer did not create the idea or set the criminal conduct into motion does not work as a mitigating factor. *See Comm. on Prof'l Ethics & Conduct v. Bauerle,* 460 N.W.2d 452, 453 (Iowa 1990); *The Florida Bar v. Calvo,* 630 So.2d 548, 550 (Fla.1993) (though scheme primarily originated with client, not lawyer, "[i]t is especially incumbent upon attorneys to use their legal expertise to discourage rather than further the type of flagrant fraud on the public involved in this case"). Though we recognize Vinyard's crimes did not involve the practice of law, we have held an attorney may be sanctioned for criminal convictions "not even remotely related to the practice of law." *See Lyzenga,* 619 N.W.2d at 332.

Given the above facts, we find revocation of Vinyard's license is necessary for deterrence, protection of the public, and maintenance of the reputation of the bar as a whole. *Stein,* 603 N.W.2d at 576. Vinyard's actions in the criminal enterprise for which he was convicted conclusively show he lacks the character and fitness required of a member of the bar. The seriousness of his violations warrants revocation of his license to practice law. Costs are assessed to Vinyard pursuant to Iowa Court Rule 35.25.

**LICENSE REVOKED.**