United States Court of Appeals
Fifth Circuit

**F I L E D**

**April 4, 2006**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 04-40876

_____

UNITED STATES OF AMERICA

            Plaintiff - Appellee

    v.

JOSE GUADALUPE MOLINA

            Defendant - Appellant

_____

Appeal from the United States District Court
for the Southern District of Texas, Laredo
No. 5:03-CR-1784-1

_____

Before KING, BARKSDALE, and DENNIS, Circuit Judges.

PER CURIAM:[*]

    Defendant-appellant Jose Guadalupe Molina appeals his judgment of conviction and sentence, arguing that: (1) the district court erred by denying his request for a mitigating role adjustment under U.S. SENTENCING GUIDELINES MANUAL § 3B1.2 (2003) [hereinafter U.S.S.G.]; (2) the district court erred by sentencing him under the mandatory Guidelines, in violation of

_____

    [*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

-1-

United States v. Booker, 543 U.S. 220 (2005); and (3) the statutes under which he was convicted, 21 U.S.C. §§ 841 and 846, are unconstitutional. For the following reasons, we AFFIRM the district court's judgment of conviction and VACATE and REMAND for resentencing.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On November 1, 2003, four border patrol agents responded to a sensor activated on the Dolores Ranch in Laredo, Texas and set up surveillance in the area.[1] Agents Marco Lara and Duke Canchola were stationed on the ground, and the other two agents remained in their marked vehicle. Agent Lara notified the other agents that he saw a man walking across the ranch, later identified as the defendant-appellant Jose Guadalupe Molina. Agent Lara then observed a second man approach Molina, and after the two men spoke with each other and scanned the area, Molina began walking toward Agent Canchola's undetected position on the ground. Agents Lara and Canchola also observed approximately ten individuals carrying duffel bags on their backs, who appeared to be following Molina.[2]

Once Molina approached Agent Canchola's position, he was arrested. Around the time Agent Canchola was arresting Molina,

---

[1] The sensor alerts agents to possible drug trafficking or illegal aliens crossing the border.

[2] Agent Canchola testified that Molina appeared to be scouting the area for law enforcement.

the individuals with the duffel bags dropped their bundles and fled. Agent Lara arrested a man in the group who was not carrying any narcotics, later identified as Gerardo Mendez-Sanchez. Although the agents did not arrest any of the individuals carrying the narcotics, they recovered ten duffel bags, which contained approximately 239.72 kilograms of marijuana.

Molina and Mendez-Sanchez were advised of their <u>Miranda</u> rights, and both agreed to make statements to the agents. Molina told the agents that his job was to go north of the narcotics load-up area and watch for law enforcement. In addition to receiving his statement, the agents seized the cell phone that Molina had been carrying in a plastic bag. The cell phone screen displayed the word "mula," slang for mule or courier in Spanish. In his statement to the agents, Mendez-Sanchez explained that his job was to erase the footprints left in the grass by those carrying the narcotics. He also told the agents that Molina was a scout for the drug operation.

On November 18, 2003, Molina and Mendez-Sanchez were charged in a two-count indictment with: (1) conspiracy to possess with intent to distribute more than 100 kilograms of marijuana, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B), and 846; and (2) possession with intent to distribute more than 100 kilograms of marijuana, in violation of 18 U.S.C. § 2 and 21 U.S.C. § 841(a)(1), (b)(1)(B). Pursuant to a written plea agreement,

-3-

Mendez-Sanchez pleaded guilty to the possession count. Molina pleaded not guilty, and his case proceeded before a jury. At Molina's trial, Mendez-Sanchez testified as a government witness that the group was following Molina and that Molina was acting as a guide. On January 14, 2004, a jury found Molina guilty of both counts in the indictment.

In the Presentence Report ("PSR"), the probation officer recommended a base offense level of 26, using U.S.S.G. § 2D1.1(c)(7), for an offense involving at least 100 kilograms of marijuana. After concluding that Molina was a manager or supervisor in the drug conspiracy pursuant to U.S.S.G. § 3B1.1(b), the probation officer recommended adding three levels to arrive at a total offense level of 29. With Molina's criminal history category of I, the recommendation resulted in a guideline imprisonment range of 87 to 108 months.

Molina objected to the PSR, disputing the three-level aggravating role adjustment under U.S.S.G. § 3B1.1(b) and requesting a minimal or minor role adjustment pursuant to U.S.S.G. § 3B1.2(a)-(b). In an addendum to the PSR, the probation officer maintained that Molina acted as a supervisor or manager of the drug conspiracy, thus warranting the three-level increase. The probation officer also recommended denying the role adjustment under either § 3B1.2(a) or (b) because she concluded that Molina's role in the drug conspiracy was "[i]n no way . . . minimal or minor."

At sentencing, Molina re-urged his objections, this time citing Blakely v. Washington, 542 U.S. 296 (2004), in support of his contention that the aggravating role adjustment under U.S.S.G. § 3B1.1(b) was not warranted because there was no jury finding that he had a managerial or supervisory role in the drug conspiracy. He also argued that he should receive a mitigating role adjustment pursuant to U.S.S.G. § 3B1.2(a)-(b), given that his role in the conspiracy was minimal or minor.

The district court found that the facts did not support a three-level enhancement for Molina's role in the offense and therefore did not apply the aggravating role adjustment. The district court denied Molina's request for a downward adjustment, finding that Molina was "clearly not just one of the mules." After re-calculating Molina's total offense level as 26, the district court determined that the guideline imprisonment range was sixty-three to seventy-eight months. In sentencing Molina, the district court stated:

> I'm going to sentence you at that lower level, 26. But I am going to sentence you around the middle, slightly above the middle, because of the weight of the marijuana, first of all. And because, as I say, you're clearly not just one of the mules. So I'm going to sentence you to 72 months. When you get out, you will be on supervised release for five years.

Molina filed this timely notice of appeal.

## II. DISCUSSION

### A. Mitigating Role Adjustment Under U.S.S.G. § 3B1.2

-5-

Molina argues that he should have received a downward adjustment under U.S.S.G. § 3B1.2 because there is no evidence showing that he had a role in coordinating the drug smuggling or that he knew anything about who supplied the marijuana or where it was to be delivered. According to Molina, his limited role of scouting the area for law enforcement and serving as a guide supports his contention that the district court erred in denying him a mitigating role adjustment.

Under U.S.S.G. § 3B1.2, a district court may reduce a defendant's offense level by four levels if the defendant was a "minimal participant" in the criminal activity or by two levels if the defendant was a "minor participant." U.S.S.G. § 3B1.2(a)-(b); United States v. Virgen-Moreno, 265 F.3d 276, 296 (5th Cir. 2001). "Such an adjustment is 'generally appropriate only if a defendant is substantially less culpable than the average participant.'" Virgen-Moreno, 265 F.3d at 296 (quoting United States v. Flucas, 99 F.3d 177, 181 (5th Cir. 1996)); see also U.S.S.G. § 3B1.2 cmt. n.3(A).

As the commentary points out, the decision of whether to apply § 3B1.2(a) or (b) "involves a determination that is heavily dependent upon the facts of the particular case." U.S.S.G. § 3B1.2 cmt. n.3(C) (noting that the court "is not required to find, based solely on the defendant's bare assertion, that such a role adjustment is warranted"). Given this fact-intensive inquiry, we will not reverse the district court's finding that

Molina's conduct did not warrant the downward adjustment unless that finding is clearly erroneous.  See Virgen-Moreno, 265 F.3d at 296.  "A factual finding is not clearly erroneous if it is plausible in light of the record read as a whole."  United States v. Villanueva, 408 F.3d 193, 203 (5th Cir.), cert. denied, 126 S. Ct. 268 (2005); see also Anderson v. Bessemer City, 470 U.S. 564, 573-74 (1985) ("If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.").

The district court's finding that Molina was "clearly not just one of the mules" is supported by the record.  Molina admitted to the border patrol agents that he was scouting the area for law enforcement, which means that his criminal activity was not confined to "mule" or courier status.  Additionally, Mendez-Sanchez testified that the individuals carrying the bundles of marijuana were following Molina and that Molina was acting as a guide.  See United States v. Pofahl, 990 F.2d 1456, 1485 (5th Cir. 1993) (holding that there was no clear error in the district court's finding that the defendant's role was not minimal or minor where the defendant's "role was not confined to that of a mule"); see also United States v. Bethley, 973 F.2d 396, 401 (5th Cir. 1992) (stating that "a 'mule' or transporter of drugs may not be entitled to minor or minimal status").  The

district court also considered the weight of the marijuana involved in this case in denying Molina's request. Our case law supports such a consideration in denying an adjustment under U.S.S.G. § 3B1.2. See United States v. Leal-Mendoza, 281 F.3d 473, 477 (5th Cir. 2002) (concluding that the district court did not clearly err in refusing an adjustment where the defendants were paid a substantial sum of money and moved a large quantity of drugs); see also United States v. Rodriquez De Varon, 175 F.3d 930, 943 (11th Cir. 1999) (en banc) (stating that drug quantity may be the best indication of a drug courier's participation in the criminal activity). Based on our review of the record in its entirety, we hold that the district court did not clearly err in refusing Molina an adjustment pursuant to U.S.S.G. § 3B1.2.

## B. Sentencing Under Mandatory Guidelines

Although Molina contends that the district court committed Booker error by sentencing him under the mandatory Guidelines, he concedes that he failed to raise this issue before the district court and therefore plain-error review applies. The government correctly notes that this case involves Fanfan error, and not Booker error, because Molina is complaining only about the district court's mandatory application of the Guidelines.[3] See United States v. Walters, 418 F.3d 461, 463 (5th Cir. 2005)

---

[3] This case does not involve Booker error because Molina stipulated to the amount of drugs involved in his offense, and drug quantity was the only fact that the district court used to increase Molina's sentence.

-8-

(discussing the difference between <u>Booker</u> and <u>Fanfan</u> error). With regard to Molina's suggested standard of review, the government readily accepts plain error as the appropriate blueprint for this case.

As an initial matter, we observe that we are not bound by Molina's concessions--or the government's acceptance of those concessions--because it is this court, and not the parties, that determines the proper standard of review. <u>See</u> <u>United States v. Vontsteen</u>, 950 F.2d 1086, 1091 (5th Cir. 1992) (en banc) ("[N]o party has the power to <u>control</u> our standard of review. . . . If neither party suggests the appropriate standard, the reviewing court must determine the proper standard on its own") (internal citation omitted); <u>see also</u> <u>St. Tammany Parish Sch. Bd. v. Louisiana</u>, 142 F.3d 776, 782 (5th Cir. 1998) ("Of course, we, not the parties, determine the proper standard of review.").

Our review of the record reveals that Molina made a <u>Blakely</u> objection in the district court, thereby preserving <u>Fanfan</u> error for harmless-error review. <u>See</u> <u>United States v. Rodriguez-Mesa</u>, --- F.3d ----, 2006 WL 633280, at *5 (5th Cir. Mar. 15, 2006) (stating that the defendant preserves <u>Fanfan</u> error by raising a <u>Blakely</u> objection in the district court). Under harmless-error review, we will normally vacate and remand for resentencing unless the government can prove that the error was harmless beyond a reasonable doubt. <u>United States v. Mares</u>, 402 F.3d 511, 520 n.9 (5th Cir.) (stating that if the issue presented in <u>Fanfan</u>

-9-

is preserved, this court will vacate and remand unless the error is harmless under FED. R. CRIM. P. 52(a)), cert. denied, 126 S. Ct. 43 (2005). "[T]he government must shoulder the heavy burden of demonstrating that the district court would not have imposed a different sentence under the advisory regime--in essence, the [g]overnment must prove a negative." United States v. Woods, --- F.3d ----, 2006 WL 325262, at *3 (5th Cir. Feb. 13, 2006); see also United States v. Akpan, 407 F.3d 360, 377 (5th Cir. 2005) (stating that the government must "prove beyond a reasonable doubt that the district court would not have sentenced [the defendant] differently had it acted under an advisory Guidelines regime").

We have reviewed the record in its entirety, and there is nothing in the record indicating that the district court would not have sentenced Molina differently under advisory Guidelines. In fact, the district court judge did not make any statement at sentencing regarding what he would have done under an advisory sentencing regime. Under the harmless-error standard, "[t]he judge's silence as to whether or not he would have imposed a different sentence under an advisory regime does not satisfy th[e] [government's] burden." United States v. Pineiro, 410 F.3d 282, 286 (5th Cir. 2005). Accordingly, we must vacate Molina's sentence and remand for further proceedings.

**C.   Constitutionality of 21 U.S.C. §§ 841(a), 841(b), 846**

Finally, Molina argues, for the first time on appeal, that the statutes under which he was convicted, 21 U.S.C. §§ 841(a), 841(b), and 846, are facially unconstitutional under <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000).  As he correctly concedes, this claim is foreclosed by circuit precedent.  <u>See</u> <u>United States v. Slaughter</u>, 238 F.3d 580, 582 (5th Cir. 2000) ("We see nothing in the Supreme Court decision in <u>Apprendi</u> which would permit us to conclude that 21 U.S.C. §§ 841(a) and (b), 846, and 860(a) are unconstitutional on their face.").

### III. CONCLUSION

For the foregoing reasons, we AFFIRM Molina's judgment of conviction as imposed by the district court, and VACATE and REMAND for resentencing in accordance with this opinion.