WATERMAN, J.
(concurring specially).
I join in the well-reasoned majority opinion, but write separately to respond to the dissent by Justice Wiggins. The dissent accuses Bieber of stealing and calls for the permanent revocation of his law license. The dissent’s accusation is inaccurate, and the dissent’s punishment does not fit the crime. Bieber did not steal a dime. Nor did he know other parties to the real estate transaction ultimately would default on the bank loan. Bieber collected only a standard $400 fee and, later,. personally paid the entire $37,969 restitution to make the bank whole. Before this case, he had an unblemished record, excellent reputation, and history of *529 giving back to his community with voluntary service. The Attorney Disciplinary Board, acting as prosecutor, never sought revocation and concurred in the six-month suspension recommended by the grievance commission panel that conducted the evi-dentiary hearing. The revocation cases cited by the dissent involved far more egregious misconduct.
The majority opinion does what our court strives to do in all lawyer discipline cases: carefully reviews the evidence, the applicable rules, the mitigating and aggravating circumstances, and precedent to determine the appropriate sanction. One size does not fit all. See Iowa Supreme Ct. Att’y Disciplinary Bd. v. Cannon, 821 N.W.2d 873, 880 (Iowa 2012) (“There-is no standard sanction warranted by any particular type of misconduct. Though prior cases can be instructive, the sanction warranted in a particular case must be based on the circumstances of that case.” (Citation omitted.)). The dissent’s call for revocation on this record is at odds with our court’s precedent. Notably, Justice Wiggins’s dissent fails to cite the decision he authored in Iowa Supreme Court Attorney Disciplinary Board v. Iversen, 723 N.W.2d 806, 810-12 (Iowa 2006). In that ease, our court suspended for one year the license of an attorney guilty of tax fraud. Iversen, 723 N.W.2d at 811-12. Iversen cheated our state government out of $207,743-mon-ey he pocketed illegally. Id. at 808. Iver-sen also failed to file a federal tax return for ten years, allowing him to illegally retain $180,000 to $200,000 in taxes that he owed the federal government. Id. Iver-sen’s revocation clearly would be required under the definition of stealing in today’s dissent. Justice Wiggins wrote in that case, “ ‘It is as wrong for a lawyer to cheat the government as it is for him to cheat a client.’ ” Id. at 810 (quoting Comm. on Prof'l Ethics & Conduct v. Strack, 225 N.W.2d 905, 905 (Iowa 1975)). But, he also stated, “[W]e adapt sanctions to the unique facts of each case.” Id. That is what he fails to do today.
The dissent gets the facts wrong, and then misapplies our precedent. The dissent argues Bieber knowingly “assisted a client in stealing money from the bank.” First, the record evidence confirms Bieber did not know anyone in the transaction would steal or fail to repay the bank loan. He believed the borrowers would spend the additional loan proceeds to fix up the property that secured the loan. He assumed the bank would be repaid. Bieber was not charged with theft, nor could he have been charged with theft absent intent to deprive another of property. See Iowa Code § 714.1(1) (2005).
Second, Bieber’s client was Wood, the seller. Bieber did not represent Hanneken or Herdrich, the buyers who later “stole” from the bank by defaulting on the loan they obtained. Bieber, to his shame and regret, enabled them by falsifying the documents to show an inflated sale price in a single transaction before the real estate market crashed. His misconduct warrants the six-month suspension our court imposes today, as recommended by the disciplinary board and grievance commission. But, the dissent is wrong to equate Bieber’s conduct to the “conduct that prompted us to revoke the law licenses” of the attorneys in four other cases: Iowa Supreme Court Attorney Disciplinary Board v. Nelsen, 807 N.W.2d 259, 267-68 (Iowa 2011); Iowa Supreme Court Board of Professional Ethics & Conduct v. Vinyard, 656 N.W.2d 127, 132 (Iowa 2003); Committee on Professional Ethics & Conduct v. Hall, 463 N.W.2d 30, 35-36 (Iowa 1990); and Committee on Professional Ethics & Conduct v. Littlefield, 244 N.W.2d 824, 825-26 (Iowa 1976).
*530 The majority opinion correctly distinguishes Nelsen and Vinyard. In Nelsen, the attorney violated court orders by diverting at least $141,385 of receivables to his clients and thereby knowingly aided and abetted their conversion of bank funds. 807 N.W.2d at 261, 267. In Vinyard, the attorney was convicted of fourteen counts of mail fraud and twelve counts of money laundering. 656 N.W.2d at 128. The victims’ loss exceeded $2.8 million. Id. at 131. We noted Vinyard “engaged in a lengthy pattern of misconduct ... all for the sake of personal, pecuniary gain.” Id. at 132. By contrast, Bieber’s discipline involves a single transaction in which he merely collected a $400 fee. He was not breaking the rules for personal gain, and he made the victim bank whole by paying the restitution of $37,969.
Hall likewise involved aggravating circumstances not present here. In that case, the lawyer entered into a series of business transactions with his client over a four-year period despite their conflicting interests and the absence of disclosure and consent. Hall, 463 N.W.2d at 33-35. Some of the transactions were for the lawyer’s benefit alone, and most were disastrous for the client, who lost several hundred thousand dollars. Id. at 35-36. Hall lied to obtain a $350,000 bank loan and “later gave false testimony in a sworn deposition regarding the incident, and also when he made false representations to the Committee on Professional Ethics and Conduct.” Id. at 35. Hall also had been reprimanded for misconduct with another client three years earlier. Id. at 36. By contrast, Bieber had a clean record, and his misconduct did not harm his client. He cooperated throughout the disciplinary proceedings and testified truthfully.
Littlefield is no closer to the mark. Lit-tlefield was sentenced to incarceration for one year in a Kentucky county jail for bank fraud and then violated the terms of his probation by foregoing court-ordered psychiatric treatment and fleeing to Iowa to practice law in willful disobedience of the Kentucky court order. Littlefield, 244 N.W.2d at 825-26. By contrast, Bieber honored the terms of his probation, complied with court orders, and expressed appropriate remorse and contrition.
None of the other revocation cases relied on by the dissent is on point here. Moreover, the dissent’s discussion of revocation cases from other jurisdictions fails to mention that in most of those states, revocation can be temporary, with readmission permitted. See James R. Zazzali, The Whys and Hows of Permanent Disbarment: New Jersey’s Wilson Rule, 21 Geo. J. Legal Ethics 311, 337 n. 224 (2008) (listing Iowa as one of approximately six states where license revocation is permanent). Similarly, the dissent relies on the ABA standards without noting disbarment may only be temporary. See ABA Model Rules for Lawyer Disciplinary Enforcement R. 25 (2002) (permitting and setting forth the criteria for readmission after disbarment). By contrast, revocation of an Iowa law license is permanent.
I agree revocation is appropriate when a lawyer steals or helps another person the lawyer knows is stealing. That is not what Bieber did. His six-month suspension fits the crime and matches the six-month suspension today for comparable misconduct in Iowa Supreme Court Disciplinary Board v. Wheeler, 824 N.W.2d 505 (Iowa 2012).
ZAGER, J., joins this special concurrence.