# IN THE SUPREME COURT OF IOWA

No. 18–2219

Filed May 3, 2019

**IOWA SUPREME COURT ATTORNEY DISCIPLINARY BOARD,**

Complainant,

vs.

**DON RICHARD JOHN BAUERMEISTER,**

Respondent.

On review of the report of the Iowa Supreme Court Grievance Commission.

Grievance commission recommends the revocation of an attorney's license to practice law for violation of a disciplinary rule. **LICENSE REVOKED.**

Tara van Brederode and Amanda K. Robinson, for complainant.

Clarence B. Meldrum Jr., Council Bluffs, for respondent.

**WATERMAN, Justice.**

Attorney Don Richard John Bauermeister pleaded guilty to federal felony drug charges. He sent a coconspirator on multiple trips to Oregon to acquire bulk quantities of marijuana for Bauermeister to sell for profit in Omaha. His mule was arrested in Utah returning with thirteen pounds of marijuana.[1] When federal agents served a search warrant on Bauermeister, he self-reported to the Iowa Supreme Court Attorney Disciplinary Board (Board), and his license was placed under temporary suspension. The Board charged Bauermeister with violating Iowa Rule of Professional Conduct 32:8(4)(b) (committing a criminal act reflecting adversely on the lawyer's honesty, trustworthiness, or fitness). A division of the Iowa Supreme Court Grievance Commission found Bauermeister violated the rule and recommended revocation of his law license. The Board seeks revocation. For the reasons explained below, we revoke his license to practice law.

## I. Background Facts and Proceedings.

We find the following facts on our de novo review of the record. Bauermeister, a resident of Omaha, Nebraska, was admitted to practice law in Iowa in 2002. He worked as a full-time assistant city attorney for the City of Council Bluffs. He also maintained a small, part-time private practice in Council Bluffs. His private practice consisted primarily of defending criminal cases. Bauermeister closed his private practice and resigned from the city attorney's office after his arrest.

From November 18, 2016, until January 9, 2017, Bauermeister conspired with other individuals to buy marijuana in Oregon to sell in Omaha. Bauermeister engaged in drug dealing to make money. He does

---

[1]*See United States v. Molina*, 174 F. App'x 812, 815 (5th Cir. 2006) (noting that "mule" is slang for "transporter of drugs").

not claim any addiction or medicinal need for marijuana. Bauermeister paid a coconspirator to travel from Omaha to Medford, Oregon, pick up the marijuana, and bring it to Omaha. Bauermeister's coconspirator made three trips to bring marijuana from Oregon to Nebraska for resale. For the first two trips, Bauermeister paid the mule $1500 upon delivery of the marijuana to Bauermeister in Omaha. The coconspirator brought back six pounds of marijuana on the first trip and eight pounds on the second trip.

For the third trip, Bauermeister agreed to pay Gerald Wyzenski $2000 upon delivery of the marijuana. On January 9, 2017, during the drive back from Oregon, Wyzenski was stopped by a Utah state trooper for having an expired motor vehicle registration. The trooper smelled marijuana in the vehicle and conducted a search. This search revealed twelve, one-pound packages of marijuana and one package of THC wax, together weighing thirteen pounds.

Law enforcement obtained a search warrant for Wyzenski's cell phone, which held text messages with Bauermeister about the drug deals. In these text messages, Bauermeister gave specific directions to meet the source of the marijuana.

On May 31, federal agents personally served Bauermeister with a search warrant for his cell phone. He turned his phone over to the agents and cooperated with the investigation. On June 9, Bauermeister self-reported his conduct to the Board.

On August 24, Bauermeister was indicted on one count of conspiring to possess and distribute a controlled substance in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(D), and 846 (2012). This offense is a felony under federal law and carries a maximum five-year prison term, a

maximum fine of $250,000, and a term of supervised release of at least two, and not more than three, years.

On October 30, Bauermeister pleaded guilty as charged in the indictment in exchange for the federal government's nonbinding sentencing recommendation of probation. Bauermeister was sentenced on January 29, 2018, to five years of probation and a $5000 fine. Bauermeister's license to practice law has been temporarily suspended since February 21 of that year. Bauermeister filed an affidavit consenting to revocation of his license. Our court elected to refer his case to the Board for investigation.

On July 19, the Board filed a complaint against Bauermeister, alleging he violated Iowa Rule of Professional Conduct 32:8.4(b) by "commit[ting] a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects." The Board gave him notice that his criminal conviction was conclusive evidence warranting revocation or suspension of his license under Iowa Code section 602.10122 (2016). The Board also notified him that it intended to invoke the doctrine of issue preclusion under Iowa Court Rule 36.17(4)(*c*).

The parties stipulated to the facts and to Bauermeister's violation of Iowa Rule of Professional Conduct 32:8.4(b). On December 26, after a hearing, the commission issued its findings of fact, conclusions of law, and recommended sanction. The commission adopted the stipulation of facts and rule violation and recommended revocation until February 21, 2023.

The parties disagree as to the appropriate sanction. Bauermeister now requests a suspension of his license to practice law until

January 31, 2023, to track with his federal probation. The Board recommends revocation.

## II. Standard of Review.

"We review attorney disciplinary proceedings de novo." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Templeton*, 784 N.W.2d 761, 764 (Iowa 2010). "The Board has the burden of proving a violation of an ethical rule 'by a convincing preponderance of the evidence.'" *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Moran*, 919 N.W.2d 754, 758 (Iowa 2018) (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Van Ginkel*, 809 N.W.2d 96, 102 (Iowa 2012)). "A convincing preponderance of the evidence is more than a preponderance of the evidence, but less than proof beyond a reasonable doubt." *Id.* (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Thomas*, 844 N.W.2d 111, 113 (Iowa 2014)). "It is also a less stringent burden than clear and convincing evidence which is 'the highest civil law standard of proof.'" *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Roush*, 827 N.W.2d 711, 716 (Iowa 2013) (quoting *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Ronwin*, 557 N.W.2d 515, 517 (Iowa 1996)).

The parties have submitted a stipulation of facts and violation. "Stipulations of fact are controlling, but stipulations as to violations and appropriate sanctions do not bind us." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Lubinus*, 869 N.W.2d 546, 549 (Iowa 2015). "Upon proof of misconduct, we may impose a greater or lesser sanction than the sanction recommended by the commission." *Templeton*, 784 N.W.2d at 764.

## III. Ethical Violations.

The Board alleged, and Bauermeister admits, that Bauermeister's conviction of conspiring to possess and distribute a controlled substance

in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(D), and 846 is a felony criminal act that reflects on his fitness to practice law and, therefore, establishes a violation of Iowa Rule of Professional Conduct 32:8.4(b).

Rule 32:8.4(b) provides, "It is professional misconduct for a lawyer to . . . commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects." Iowa R. Prof'l Conduct 32:8.4(b). Nevertheless, "[t]he mere commission of a criminal act does not necessarily reflect adversely on the fitness of an attorney to practice law." *Templeton*, 784 N.W.2d at 767.

In *Templeton*, we adopted Oregon's approach to analyzing when an attorney's criminal act reflects on his fitness to practice law.

> Each case must be decided on its own facts. There must be some rational connection other than the criminality of the act between the conduct and the actor's fitness to practice law. Pertinent considerations include the lawyer's mental state; the extent to which the act demonstrates disrespect for the law or law enforcement; the presence or absence of a victim; the extent of actual or potential injury to a victim; and the presence or absence of a pattern of criminal conduct.

*Id.* (quoting *In re Conduct of White*, 815 P.2d 1257, 1265 (Or. 1991) (en banc)).

Bauermeister engaged in a pattern of criminal conduct through his involvement in illegal drug trafficking from Oregon to Nebraska. He used a coconspirator to pick up the marijuana in Oregon and drive back with it, exposing that individual to felony criminal liability. Bauermeister's motivation was greed. His actions showed a disrespect for the law and law enforcement that is particularly troubling given his employment as a Council Bluffs city attorney and his criminal defense private practice representing persons charged with drug crimes. We conclude Bauermeister's criminal conduct reflects on his fitness to practice law,

establishing a violation of rule 32:8.4(b). We must next determine the proper sanction.

### IV. Sanction.

As noted, Bauermeister initially consented to revocation of his law license. Our rules now permit a revoked attorney to seek reinstatement after five years. Iowa Ct. R. 34.25(7). The commission recommended revocation of Bauermeister's license to practice law. The Board also recommends revocation. The Board notes that revoking Bauermeister's license now would prevent him from applying for reinstatement until one year after his probation ends but that revocation is still the appropriate sanction given our precedent and the commission's recommendations. Bauermeister presently recommends a period of suspension to run until he completes his federal probation in 2023.

There is no uniform sanction for a particular ethical violation. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Turner*, 918 N.W.2d 130, 153 (Iowa 2018). "We craft appropriate sanctions based upon each case's unique circumstances, although prior cases are instructive." *Roush*, 827 N.W.2d at 718 (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Kallsen*, 814 N.W.2d 233, 239 (Iowa 2012)). "Nevertheless, we try to achieve consistency with our prior cases when determining the proper sanction." *Templeton*, 784 N.W.2d at 769.

> In determining the appropriate discipline, we consider the nature of the alleged violations, the need for deterrence, protection of the public, maintenance of the reputation of the bar as a whole, and the respondent's fitness to continue in the practice of law, as well as any aggravating and mitigating circumstances. The form and extent of the sanctions must be tailored to the specific facts and circumstances of each individual case. Significant distinguishing factors in the imposition of punishment center on the existence of multiple instances of neglect, past disciplinary problems, and other companion violations.

*Iowa Supreme Ct. Att'y Disciplinary Bd. v. Cannon*, 821 N.W.2d 873, 880 (Iowa 2012) (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Weaver*, 812 N.W.2d 4, 13 (Iowa 2012)).

"A felony conviction is grounds for revocation or suspension of an attorney's license to practice law." *Roush*, 827 N.W.2d at 718 (quoting *Weaver*, 812 N.W.2d at 13); *see also* Iowa Code § 602.10122(1) (stating that when an attorney is convicted of a felony, "[t]he record of conviction is conclusive evidence"). In *Roush*, we suspended the attorney's license to practice law for sixty days after he pleaded guilty to possession of cocaine base, a federal felony. 827 N.W.2d at 714, 720. *Roush*, however, is distinguishable. Stanley Roush was a drug user and alcoholic with a substance abuse problem, not a drug dealer motivated by greed. *Roush*, 827 N.W.2d at 716–17. After his arrest, Roush addressed his substance abuse issues through participation in counseling and Alcoholics Anonymous. *Id.* Bauermeister claims no substance abuse addiction or mental health issues. He knowingly violated the controlled substances law for personal profit, not personal consumption.

By contrast, we have consistently revoked the licenses of attorneys who engaged in drug trafficking. *Comm. on Prof'l Ethics & Conduct v. Kaufman*, 515 N.W.2d 28, 29, 31 (Iowa 1994) ("Any fair comparison with sanctions in similar cases will show that revocation is demanded."); *Comm. on Prof'l Ethics & Conduct v. Owens*, 427 N.W.2d 463, 465 (Iowa 1988) ("We do not think a lawyer who had a part in a conspiracy concerning illegal drug traffic possesses the qualities of good character essential in a member of the Iowa bar."); *Comm. on Prof'l Ethics & Conduct v. Green*, 285 N.W.2d 17, 18 (Iowa 1979) (revoking license of attorney who took part in delivery of drugs, even though he "characterized himself as a 'dupe' in the transaction"); *Comm. on Prof'l*

*Ethics & Conduct v. Hanson*, 244 N.W.2d 822, 824 (Iowa 1976) (revoking license of attorney "who attempted to engage in illegal drug traffic and who converted partnership funds"); *see also In re Disciplinary Action Against Huff,* 872 N.W.2d 750, 755 (Minn. 2015) (imposing reciprocal disbarment of attorney disbarred in Illinois following guilty plea to federal charge of conspiracy to distribute marijuana); Model Standards for Imposing Lawyer Sanctions Standard 5.11(a) (Am. Bar Ass'n 1992) ("Disbarment is generally appropriate when . . . a lawyer engages in serious criminal conduct [including] . . . the sale, distribution or importation of controlled substances . . . or an attempt or conspiracy or solicitation of another to commit [such an offense].").

We have imposed lesser sanctions for criminal conduct involving personal drug use or impaired driving. *See Roush*, 827 N.W.2d at 719–21 (surveying cases). But we have never imposed a sanction less than revocation for lawyers engaged in felony drug dealing for profit. And, without exception, we revoked their law licenses even before our rule change permitted applications for reinstatement after five years.

This case presents aggravating circumstances. Bauermeister was the orchestrator of the illegal drug dealing. He paid a coconspirator to assume the risk of transporting marijuana across state lines, resulting in federal felony criminal charges against that individual. Bauermeister participated in at least two earlier drug deals over several months before his mule was stopped by police and arrested. Bauermeister's pattern of criminal conduct shows disrespect for the rule of law and for law enforcement officials. *Id.* at 717 (noting that "disrespect for the law would 'lessen . . . public confidence in the legal profession'" (alteration in original) (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Barry*, 762 N.W.2d 129, 138 (Iowa 2009)); *Owens*, 427 N.W.2d at 465 ("In other

disciplinary decisions involving controlled substances, attorneys have not been treated charitably.").

Another aggravating factor is that Bauermeister engaged in for-profit drug dealing while serving as an assistant city attorney. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Stansberry*, 922 N.W.2d 591, 600 (Iowa 2019) (noting that an attorney's position as an assistant county attorney at the time of his criminal conduct was an aggravating factor). Illegal conduct by a public official is "particularly egregious." *Comm. on Prof'l Ethics & Conduct v. Tompkins*, 415 N.W.2d 620, 623 (Iowa 1987). Further, in Bauermeister's private practice, he primarily handled criminal cases, such that he "was violating the category of laws that he regularly encountered in his daily work." *Roush*, 827 N.W.2d at 717. Finally, the fact Bauermeister committed a felony for his own financial gain supports revocation. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Engelmann*, 840 N.W.2d 156, 166 (Iowa 2013) (collecting cases revoking licenses of attorneys convicted of financial fraud crimes for personal gain). We distinguished other financial fraud cases imposing suspensions when the attorney helped client-wrongdoers obtain loans under false pretenses without personally profiting and while believing the loans would be repaid. *Id.* at 164–66 (distinguishing *Iowa Supreme Court Attorney Disciplinary Board v. Bieber*, 824 N.W.2d 514 (Iowa 2012), and *Iowa Supreme Court Attorney Disciplinary Board v. Wheeler*, 824 N.W.2d 505 (Iowa 2012)).

We find mitigating factors in this case insufficient to forestall revocation. Bauermeister has no prior discipline. *Lubinus*, 869 N.W.2d at 552 (noting that lack of disciplinary record is a mitigating factor). Bauermeister has also been actively involved in his children's activities, including serving as an athletic coach for more than ten years. *Cf. Iowa*

*Supreme Ct. Att'y Disciplinary Bd. v. Stoller*, 879 N.W.2d 199, 221 (Iowa 2016) (considering community service in mitigation). Further, Bauermeister's illegal conduct did not harm any client of his private practice. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Marks*, 831 N.W.2d 194, 202 (Iowa 2013) (noting that lack of harm is a mitigating factor). Bauermeister cooperated with law enforcement and with the Board and has accepted responsibility for his actions. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Eslick*, 859 N.W.2d 198, 202 (Iowa 2015) ("[R]emorse and cooperation generally mitigate our sanction."). Another mitigating factor is that Bauermeister self-reported his offense to the Board. However, this mitigation is lessened somewhat because Bauermeister did not self-report his conduct until after he was served with a search warrant by federal agents. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Johnson*, 884 N.W.2d 772, 781 (Iowa 2016).

After reviewing the recommendations from the commission, the Board, and Bauermeister; the aggravating and mitigating factors; and our precedent, we conclude the appropriate sanction is revocation of Bauermeister's license to practice law.

### V. Disposition.

We revoke Bauermeister's license to practice law in the State of Iowa. All costs of this proceeding are assessed against him. Iowa Ct. R. 36.24(1).

**LICENSE REVOKED.**

All justices concur except Wiggins, J., who concurs in part and dissents in part, and Christensen, J., who takes no part.

#18–2219, *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Bauermeister*

**WIGGINS, Justice (concurring in part and dissenting in part).**

I respectfully dissent. I agree with the majority that Bauermeister's conduct violated Iowa Rule of Professional Conduct 32:8.4(b). However, I disagree on the appropriate sanction.

In determining the proper sanction, "we consider 'the nature of the violations, protection of the public, deterrence of similar misconduct by others, the lawyer's fitness to practice, and [the court's] duty to uphold the integrity of the profession in the eyes of the public.' " *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Powell*, 726 N.W.2d 397, 408 (Iowa 2007) (alteration in original) (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Iversen*, 723 N.W.2d 806, 810 (Iowa 2006)). We also consider any aggravating or mitigating circumstances. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Templeton*, 784 N.W.2d 761, 769–70 (Iowa 2010). Most importantly, we try to achieve consistency with prior cases involving similar misconduct. *Id.* at 769.

A conviction of a felony may be grounds for revocation or suspension of an attorney's license to practice law. Iowa Code § 602.10122(1) (2019). Prior to 1990, we revoked attorneys' licenses for illegal drug trafficking. *Comm. on Prof'l Ethics & Conduct v. Owens*, 427 N.W.2d 463, 465 (Iowa 1988) ("We do not think a lawyer who had a part in a conspiracy concerning illegal drug traffic possesses the qualities of good character essential in a member of the Iowa bar."); *Comm. on Prof'l Ethics & Conduct v. Green*, 285 N.W.2d 17, 18 (Iowa 1979) (en banc) (revoking license of attorney who took part in delivery of drugs even though he "characterized himself as a 'dupe' in the transaction"); *Comm. on Prof'l Ethics & Conduct v. Hanson*, 244 N.W.2d 822, 824 (Iowa 1976) (en banc) (revoking license of attorney "who attempted to engage in illegal

drug traffic and who converted partnership funds"). In recent years, we have taken a different approach to attorneys who commit felonies.

In *Iowa Supreme Court Board of Professional Ethics & Conduct v. Marcucci*, the attorney pled guilty to operating while intoxicated (OWI), third offense, a class "D" felony. 543 N.W.2d 879, 880 (Iowa 1996) (en banc). We suspended the attorney's license for six months. *Id.* at 883.

In *Iowa Supreme Court Board of Professional Ethics & Conduct v. Palmer*, the attorney pled guilty to "fraudulent use of an unauthorized access device to obtain monies from a federally insured bank," a felony under federal law. 563 N.W.2d 634, 634–35 (Iowa 1997) (per curiam). This crime involves dishonesty. *Id.* at 635. The attorney was not imprisoned for his crime, but he failed to answer the disciplinary complaint, respond to the disciplinary board's requests for admissions, and appear for his disciplinary hearing. *Id.* We revoked the attorney's license. *Id.*

In *Iowa Supreme Court Board of Professional Ethics & Conduct v. Vinyard*, a federal jury found the attorney guilty of twelve counts of money laundering and fourteen counts of mail fraud. 656 N.W.2d 127, 128 (Iowa 2003). These crimes involve dishonesty. *Id.* at 130, 131–32. The court sentenced him to "imprisonment of seventy months and ordered [him] to pay a special assessment of $2600 plus restitution of over $1,418,000." *Id.* at 129. We revoked the attorney's license. *Id.* at 132.

In *Iowa Supreme Court Attorney Disciplinary Board v. Dull*, the attorney was convicted of OWI, third offense, a class "D" felony. 713 N.W.2d 199, 202 (Iowa 2006), *overruled in part on other grounds by Templeton*, 784 N.W.2d at 768–69. The attorney had other rule violations

in addition to the rule violations arising from the felony conviction. *Id.* at 203–05. We suspended the attorney's license for two years. *Id.* at 207.

In *Iowa Supreme Court Attorney Disciplinary Board v. Carroll*, the attorney pled guilty to second-degree theft, a class "D" felony under Iowa law. 721 N.W.2d 788, 790 (Iowa 2006). This crime involves dishonesty. *See id.* at 791. The court "placed [the attorney] on probation for twenty-four months and ordered [him] to complete 100 hours of approved community service." *Id.* at 790. We revoked the attorney's license. *Id.* at 792.

In *Iowa Supreme Court Attorney Disciplinary Board v. Weaver*, the attorney pled guilty to OWI, third offense, a class "D" felony. 812 N.W.2d 4, 7 (Iowa 2012). The court sentenced the attorney to five years in prison and a fine of $3125. *Id.* at 7–8. We suspended the attorney's license for two years. *Id.* at 15.

In *Iowa Supreme Court Attorney Disciplinary Board v. Wheeler*, the attorney pled guilty to the felony of knowingly making a false statement to a financial institution. 824 N.W.2d 505, 509 (Iowa 2012). There, the attorney had executed mortgage application documents that were prepared by a client and contained misstatements. *Id.* at 508–09. The federal court "sentenced [him] to time served, placed him on supervised release for five years, ordered him to perform 200 hours of community service, and required him to pay $821,134 in restitution." *Id.* at 509. We suspended the attorney's license for six months. *Id.* at 513.

In *Iowa Supreme Court Attorney Disciplinary Board v. Bieber*, the attorney pled guilty to misprision of a felony, a felony under federal law. 824 N.W.2d 514, 516 (Iowa 2012). The attorney provided information in a real estate closing process that falsely stated the inflated sale price was the agreed sale price and "failed to reveal the lower actual price and cash

back payment." *Id.* at 517. The federal court sentenced the attorney to three years of probation and ordered him to pay $37,969.99 as restitution to the lender. *Id.* at 516. We suspended the attorney's license for six months. *Id.* at 528.

In *Iowa Supreme Court Attorney Disciplinary Board v. Roush*, the attorney pled guilty to possession of cocaine base, a felony under federal law. 827 N.W.2d 711, 714 (Iowa 2013). The attorney was sentenced to "a fifteen-day prison term and a $2500 fine." *Id.* We suspended the attorney's license for sixty days. *Id.* at 720.

In *Iowa Supreme Court Attorney Disciplinary Board v. Stowe*, the attorney was convicted of two counts of felony forgery in violation of Iowa Code section 715A.2. 830 N.W.2d 737, 741 (Iowa 2013). The convictions stemmed from the attorney forging a client's signature "on two checks [the attorney] had stolen and used to transfer funds into his personal bank account." *Id.* Forgery is a crime involving dishonesty. *See id.* at 741, 743. The attorney also had a nonfelony conviction for possession of methamphetamine. *Id.* at 741. We revoked the attorney's license because he converted funds to which he did not have a colorable future claim.[2] *Id.* at 742–43.

In *Iowa Supreme Court Attorney Disciplinary Board v. Engelmann*, a federal jury convicted the attorney of one count of conspiracy to commit bank fraud or wire fraud, two counts of bank fraud, and six counts of wire fraud. 840 N.W.2d 156, 158–59 (Iowa 2013). These crimes deal with dishonesty. *See id.* at 159–60. The court sentenced the attorney to thirty-six months' imprisonment and ordered him to pay a total of

---

[2]We declined to address the ethics violations arising from the attorney's other misconduct, including the possession conviction, because we decided to revoke his license for the conversion-related misconduct. *Stowe,* 830 N.W.2d at 741.

$392,937.73 in restitution to the defrauded financial institutions. *Id.* at 164. We revoked the attorney's license. *Id.* at 167.

In examining these cases where felony convictions were the basis of discipline, a pattern arises. Where the felony involves dishonesty, we consider whether the dishonesty was intended to result in the misappropriation or conversion of funds. If it was so intended, as in *Palmer, Vinyard, Carroll, Stowe,* and *Engelmann,* we have not hesitated to revoke the attorney's license. *See Engelmann,* 840 N.W.2d at 167; *Stowe,* 830 N.W.2d at 742–43; *Carroll,* 721 N.W.2d at 792; *Vinyard,* 656 N.W.2d at 132; *Palmer,* 563 N.W.2d at 635. If the dishonesty was not so intended, as in *Wheeler* and *Bieber,* we have merely suspended the attorney's license. *Bieber,* 824 N.W.2d at 528; *Wheeler,* 824 N.W.2d at 513. And when the felony involves drugs or alcohol, as in *Marcucci, Dull, Weaver,* and *Roush,* we have not revoked the attorney's license. *See Roush,* 827 N.W.2d at 714, 720; *Weaver,* 812 N.W.2d at 7, 15; *Dull,* 713 N.W.2d at 202, 207; *Marcucci,* 543 N.W.2d at 880, 883.

Because Bauermeister's conduct does not involve dishonesty, his conviction for conspiracy to possess and distribute marijuana should not lead to the revocation of his license to practice law. Instead, we must look at the aggravating and mitigating factors to determine the proper discipline. This disposition is consistent with other jurisdictions. *See, e.g., Fink v. Ky. Bar Ass'n,* 568 S.W.3d 354, 355, 356–57 (Ky. 2019) (after considering aggravating and mitigating factors, suspending Kentucky attorney's license for five years following Indiana conviction of felonious methamphetamine dealing); *Notice of Suspension & Restitution with Conditions re* Waters, Nos. 12-101-AI, 12-140-JC, 13-47-GA, at 1 (Mich. Att'y Discipline Bd. July 18, 2013), http://www.adbmich.org/coveo/notices/2013-07-18-12n-101a.pdf [https://

perma.cc/4C23-M5RP] (suspending Michigan attorney's license for three years after conviction of two counts of felonious delivery of a controlled substance); *In re Disciplinary Proceedings Against Waters*, 876 N.W.2d 145, 146–47 (Wis. 2016) (per curiam) (suspending, on reciprocal discipline, Michigan attorney's license to practice in Wisconsin for three years).

Bauermeister was a public official when he committed this act. This is an aggravating factor. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Stansberry*, 922 N.W.2d 591, 600 (Iowa 2019) (treating attorney's position as an assistant county attorney at the time of the criminal conduct as an aggravating factor).

On the other side of the scale, many mitigating factors are in Bauermeister's favor. First, he has no prior record of discipline. *See Bieber*, 824 N.W.2d at 527; *Wheeler*, 824 N.W.2d at 513; *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Lustgraaf*, 792 N.W.2d 295, 301–02 (Iowa 2010) (considering prior ethical practices in fashioning sanction). Second, he self-reported his conduct. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Thompson*, 732 N.W.2d 865, 868–69 (Iowa 2007) (noting an attorney's recognition of wrongdoing is a mitigating factor). However, the mitigating force of his self-reporting is lessened by the fact that it happened only after his coconspirator was caught in January 2017 and federal agents served Bauermeister with a search warrant for his phone in May 2017. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Johnson*, 884 N.W.2d 772, 781 (Iowa 2016). Third, Bauermeister has taken responsibility for his actions and is remorseful. *See Roush*, 827 N.W.2d at 719; *Bieber*, 824 N.W.2d at 527; *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Fields*, 790 N.W.2d 791, 799 (Iowa 2010). Fourth, his conduct did not affect his behavior toward his clients, fellow lawyers, or

judges. *Cf. Iowa Supreme Ct. Att'y Disciplinary Bd. v. Keele*, 795 N.W.2d 507, 514 (Iowa 2011) (finding the board failed to demonstrate the attorney's felony conviction related to his fitness to practice law because, in part, the attorney's illegal conduct "ha[d] not affected the professional relationships he ha[d] with his clients, fellow lawyers, or judges"). Fifth, nothing in the record suggests the conduct at issue in this case harmed any of his clients. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Cross*, 861 N.W.2d 211, 230 (Iowa 2015); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Axt*, 791 N.W.2d 98, 103 (Iowa 2010); *Marcucci*, 543 N.W.2d at 881. Sixth, he was cooperative throughout the disciplinary process. *See Roush*, 827 N.W.2d at 719; *Bieber*, 824 N.W.2d at 528; *Wheeler*, 824 N.W.2d at 513; *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Schall*, 814 N.W.2d 210, 215 (Iowa 2012); *cf. Palmer*, 563 N.W.2d at 635 (explaining the attorney's failure to answer the disciplinary complaint, respond to requests for admissions, and appear at his disciplinary hearing overbore "[a]ny inclination on our part to temper the sanction imposed"). Seventh, he has provided numerous hours of community service in his capacity as a youth sports coach. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. McGinness*, 844 N.W.2d 456, 467 (Iowa 2014) (acknowledging history of community service is a mitigating factor); *Wheeler*, 824 N.W.2d at 513.

Lastly, the assistant United States attorney who prosecuted Bauermeister and the federal judge who sentenced him did make a determination: Bauermeister did not need to be imprisoned for rehabilitation, punishment, or public-protection reasons. *See, e.g.*, *Powell*, 726 N.W.2d at 408 (noting protection of the public is a factor in determining the appropriate sanction for attorney discipline). In the past, we have only suspended attorneys who committed felonies but received probation or a similar sentence in federal criminal proceedings.

*See Bieber*, 824 N.W.2d at 516, 528; *Wheeler*, 824 N.W.2d at 509, 513 (acknowledging that the federal court found supervised release was appropriate because "there was no need to protect the public from further harm or increase the sentence to defer future conduct"). *But see Palmer*, 563 N.W.2d at 634–35 (revoking the attorney's license following his felony conviction because his fraudulent conduct was intended to result in conversion of funds and he completely failed to participate in or acknowledge the disciplinary process or proceedings).

Having considered all the factors mentioned above, I would conclude Bauermeister's conduct requires us to suspend his license to practice law indefinitely without possibility of reinstatement for three years rather than revoke his license.